Jack GOODMAN, Paramount Ice Cream Corp. and Frigid Process Co., Plaintiffs,

v.

UNITED STATES of America et al., Defendants.

Civ. No. 65-1622.

United States District Court
C. D. California.

April 17, 1968.

Goodson & Hannam, by Mark D. Pastor, Los Angeles, Cal., for plaintiffs.

Wm. Matthew Byrne, Jr., U. S. Atty., for the Central District of Cal., by Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief of Civil Division, and Dzintra I. Janavs, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THURMOND CLARKE, Chief Judge.

### FINDINGS OF FACT

1. This is an action brought by the plaintiffs seeking the return of originals and all copies of property, including books and records, of the plaintiffs, illegally obtained by the defendants from the plaintiffs as a result of an unlawful search and seizure, and the suppression of all evidence obtained either directly or indirectly therefrom, and other appropriate equitable relief.

2. Plaintiff Jack Goodman is a citizen of the United States and a resident of the County of Los Angeles, State of California, within the judicial district of this Court.

3. Plaintiff Paramount Ice Cream Corp. is a corporation incorporated under the laws of the State of California and has its principal place of business in the County of Los Angeles, State of California, within the judicial district of this Court.

4. Plaintiff Frigid Process Co. is a corporation incorporated under the laws of the State of California and has its principal place of business in the County of Los Angeles, State of California, within the judicial district of this Court.

5. Defendant United States of America is a corporation sovereign and body politic.

6. Defendant Frederick C. Nielsen is a special agent of the Intelligence Division of the Internal Revenue Service, Los Angeles, California.

7. Defendant Nielsen was the special agent in charge of the criminal income tax fraud investigation of James R. Pinkerton and Paramount Ice Cream Corp. for the period 1959 up to March 1, 1962. Defendant Nielsen was the special agent in charge of the criminal income tax fraud investigation of plaintiff Jack Goodman, plaintiff Frigid Process Co. and plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962.

8. Defendant Andre David Stutz is a special agent in the Intelligence Division of the Internal Revenue Service, Los Angeles, California. In April, 1964, defendant Stutz assisted defendant Nielsen in the criminal income tax fraud investigation of James R. Pinkerton and Paramount Ice Cream Corp. for the period 1959 up to March 1, 1962.

9. Defendant Keith M. Loebig is an Internal Revenue agent in the Audit Division of the Internal Revenue Service, Los Angeles, California.

10. Defendant Loebig was the Internal Revenue agent who, in October, 1964, commenced to assist defendant Nielsen in the criminal income tax fraud investigation of James R. Pinkerton and Paramount Ice Cream Corp. for the period 1959 up to March 1, 1962. Defendant Loebig was the Internal Revenue agent who assisted defendant Nielsen in the criminal income tax fraud investigation of plaintiff Jack Goodman, plaintiff Frigid Process Co. and plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962.

11. Manuel L. Real is a former United States Attorney for the judicial district of this Court. William M. Byrne, Jr. is the present United States Attorney for the judicial district of this Court and is deemed to be a defendant in this action in his capacity as United States Attorney for this judicial district.

12. Defendant Robert K. Lund was the Chief of the Intelligence Division, Internal Revenue Service, Los Angeles, California, during part of the time that this action has been pending. Defendant Lund is deemed to have been sued in his representative capacity.

13. The mission of the Intelligence Division of the Internal Revenue Service is accomplished by enforcement of the criminal statutes applicable to income, state, gift and certain excise taxes through the investigation of suspected violations of such laws and the recommendation of prosecution (when warranted). Criminal prosecution will be recommended in every case developed by the Intelligence activity involving an offense against the Internal Revenue laws where: (a) The evidence is sufficient to indicate guilt beyond a reasonable doubt, and (b) A reasonable probability of conviction exists. The purpose of a special agent's investigation is to obtain facts and evidence.

14. James R. Pinkerton was the president, a director and 100% shareholder of plaintiff Paramount Ice Cream Corp. prior to March 1, 1962.

15. Plaintiff Jack Goodman was on March 1, 1962, and has continued through December 16, 1965, the date of his testimony, to be the president, a director and 100% shareholder of plaintiff Frigid Process Co.

16. As of March 1, 1962, James R. Pinkerton entered into an agreement with Frigid Process Co. wherein James R. Pinkerton sold to Frigid Process Co. his ownership in Paramount Ice Cream Corp. On March 1, 1962, James R. Pinkerton resigned as the president and a director of Paramount Ice Cream Corp. On March 1, 1962, plaintiff Jack Goodman was elected president and a director of Paramount Ice Cream Corp.

17. Paramount Ice Cream Corp. had business relations with James R. Pinkerton prior to March 1, 1962 and continued to have business relations with James R. Pinkerton subsequent to March 1, 1962.

18. Plaintiff Jack Goodman has had a continuing business relationship with James R. Pinkerton over the past 27 years.

19. Samuel J. Phoebus was the group supervisor of defendant Nielsen in the Intelligence Division of the Internal Revenue Service, Los Angeles, California, during October, November, December, 1964 and January, 1965.

20. Case assignment sheets are administrative forms which are utilized to inform administrative officers of the Internal Revenue Service that a particular criminal tax investigation is being conducted. Criminal income tax fraud investigations may be conducted prior to the issuance of a case assignment sheet.

21. Plaintiff Jack Goodman had not had any conversations with agents of the Internal Revenue Service concerning tax matters prior to April, 1964. The first conversation that plaintiff Jack Goodman had with any Internal Revenue Service agent about any tax matters was with defendants Nielsen and Stutz at the Paramount Ice Cream Corp. office in April, 1964.

22. Plaintiff Jack Goodman has a grammar school level education.

23. On March 2, 1964, defendant Nielsen, in his capacity as a special agent, was assigned by his acting group supervisor in the Intelligence Division, Christian Paul, Jr., the criminal income tax fraud investigation of James R. Pinkerton for the years 1959, 1960, 1961 and 1962. The criminal income tax fraud investigation of Pinkerton included the criminal income tax fraud investigation of Paramount Ice Cream Corp. for the period beginning in 1959 up to March 1, 1962. The criminal income tax fraud investigation of Pinkerton is referred to herein as the Pinkerton-Paramount investigation.

24. Defendant Nielsen was told by James R. Pinkerton on April 7, 1964, that Pinkerton had entered into an escrow agreement effective on March 1, 1962 wherein James R. Pinkerton sold his stock ownership in plaintiff Paramount Ice Cream Corp. to plaintiff Frigid Process Co. Defendant Nielsen was also told by James R. Pinkerton on April 7, 1964 that Frigid Process Co. was owned by Jack Goodman and that Jack Goodman was the president of Paramount Ice Cream Corp.

25. In April, 1964, defendants Nielsen and Stutz went to the premises of plaintiff Paramount Ice Cream Corp. in connection with their investigation work as special agents. Defendant Nielsen introduced himself and defendant Stutz to plaintiff Jack Goodman and plaintiff Paramount Ice Cream Corp., as agents with the Internal Revenue Service, and stated to plaintiff Jack Goodman and plaintiff Paramount Ice Cream Corp. that he and Stutz were investigating the income tax liabilities of Pinkerton-Paramount.

26. It is not true that Jack Goodman asked defendant Nielsen in April, 1964, or at any other time, the difference between a "Special Agent" and an "Internal Revenue Agent". Jack Goodman was not informed by Nielsen or any other agent of the Internal Revenue Service prior to 2:30 P.M. on January 8, 1965 of the difference between a "Special Agent" and an "Internal Revenue Agent".

27. At no time in April, 1964, December, 1964, or at any other time prior to 2:30 P.M. on January 8, 1965, did defendant Nielsen, or any other agent of the Internal Revenue Service, inform the plaintiffs, or their agents, or any of them, that Nielsen or any other agent of the Internal Revenue Service was a criminal investigator.

28. At no time in April, 1964, December, 1964, or at any other time prior to 2:30 P.M. on January 8, 1965, did defendant Nielsen, or any other agent of the Internal Revenue Service, inform the plaintiffs, or their agents, or any of them, that Nielsen, or any other agent of the Internal Revenue Service, was conducting a criminal investigation of Pinkerton-Paramount or the plaintiffs, or any of them.

29. Defendant Nielsen examined books and records of Paramount Ice Cream Corp. at the office of Paramount Ice Cream Corp. during April, 1964, and on April 21, 1964, Nielsen took books and records of Paramount Ice Cream Corp. with him to his Internal Revenue Service office in Los Angeles, California.

30. Defendant Nielsen continued his work of the Pinkerton-Paramount criminal income tax fraud investigation between September 25, 1964 and November 6, 1964.

31. On November 6, 1964, defendant Nielsen prepared Internal Revenue Service Forms 2275, in which he requested that the individual income tax returns of plaintiff Jack Goodman and his wife, Betty Goodman, for the calendar tax years 1962 and 1963, be delivered to him from the Internal Revenue Service storage facility for those returns. The Forms 2275 were approved in writing by Nielsen's supervisor, Samuel J. Phoebus. Pursuant to this request, said individual income tax returns were delivered to Nielsen.

32. On November 10, 1964, defendant Nielsen prepared Internal Revenue Service Forms 2275, in which he requested that the individual income tax returns of plaintiff Jack Goodman and his wife, Betty Goodman, for the calendar tax years of 1959, 1960 and 1961 be delivered to him from the Internal Revenue Service storage facility for those returns. The Forms 2275 were approved in writing by Nielsen's supervisor, Samuel J. Phoebus. Pursuant to this request, said individual income tax returns were delivered to Nielsen.

33. The criminal income tax fraud investigation of plaintiff Jack Goodman commenced on November 10, 1964.

34. Defendant Nielsen obtained the names of savings and loan associations and banks in which Jack Goodman had accounts by examining the individual income tax returns for Jack Goodman which Nielsen received in November, 1964.

35. Plaintiff Jack Goodman and his wife, Betty Goodman, have had a joint savings account at First Federal Savings and Loan Association of South Pasadena since 1961. Neither James R. Pinkerton nor Paramount Ice Cream Corp. had ever had at any time any type of account at First Federal Savings and Loan Association of South Pasadena.

36. On November 20, 1964, defendant Nielsen went to the premises of First Federal Savings and Loan Association of South Pasadena as part of the criminal income tax fraud investigation of Jack Goodman that was commenced on November 10, 1964. While Nielsen was at the premises of First Federal Savings and Loan Association of South Pasadena on November 20, 1964, he signed and caused to be issued and served Internal Revenue Service Summons, Form 2039A directed to First Federal Savings and Loan Association of South Pasadena, requiring First Federal Savings and Loan Association of South Pasadena to produce its records pertaining to the financial condition of Jack Goodman for examination by the Internal Revenue Service.

37. Plaintiff Jack Goodman and his wife, Betty Goodman, have had a joint savings account at Glendale Federal Savings and Loan Association since December, 1960. Neither James R. Pinkerton nor Paramount Ice Cream Corp. had ever had at any time any type of account at Glendale Federal Savings and Loan Association.

38. On November 20, 1964, defendant Nielsen went to the premises of Glendale Federal Savings and Loan Association as part of the criminal income tax fraud investigation of Jack Goodman that was commenced on November 10, 1964. On or about November 23, 1964, as part of the criminal income tax fraud investigation of Jack Goodman that was commenced on November 10, 1964, defendant Nielsen signed and caused to be issued and served an Internal Revenue Service Summons, Form 2039A, directed to Glendale Federal Savings and Loan Association, requiring Glendale Federal

Savings and Loan Association to produce its records pertaining to the financial condition of Jack Goodman for examination by the Internal Revenue Service.

39. Plaintiff Jack Goodman has had a savings account with Lytton Savings and Loan Association since July 10, 1962. On December 4, 1964, defendant Nielsen went to the premises of Lytton Savings and Loan Association as part of the criminal income tax fraud investigation of Jack Goodman that was commenced on November 10, 1964. Neither James R. Pinkerton nor Paramount Ice Cream Corp. had ever had at any time any type of account at Lytton Savings and Loan Association.

40. On December 1, 1964, and December 16, 1964, defendant Nielsen went to the premises of the South Pasadena Branch of Bank of America as part of the criminal income tax fraud investigation of Jack Goodman that was commenced on November 10, 1964. Nielsen spent approximately 4½ hours on December 1, 1964 and approximately 5 hours on December 16, 1964, at the South Pasadena Branch of Bank of America. As part of the criminal income tax fraud investigation of Jack Goodman, Nielsen examined bank records pertaining to either Jack Goodman or Frigid Process Co. during the periods that he was at the said bank on December 1, 1964 and December 16, 1964. Neither James R. Pinkerton nor Paramount Ice Cream Corp. had an account with the said bank between the dates of January, 1958 through December 31, 1963.

41. A case assignment sheet dated December 18, 1964, was prepared in which Jack Goodman was named as the taxpayer under a criminal income tax fraud investigation. The source of the investigation was defendant Nielsen and the assignment was made to Nielsen by Samuel J. Phoebus. The tax years involved in the said investigation were 1959, 1960, 1961, 1962 and 1963.

42. The criminal income tax fraud investigation of Jack Goodman was commenced prior to the preparation of the said case assignment sheet dated December 18, 1964.

43. On December 18, 1964, defendant Nielsen and defendant Loebig went to the premises of plaintiff Paramount Ice Cream Corp. as part of the investigation of Jack Goodman that was commenced on November 10, 1964. Nielsen told Jack Goodman on December 18, 1964 that he and Loebig were continuing the Pinkerton-Paramount investigation and desired to examine books and records of Paramount Ice Cream Corp. At no time on December 18, 1964 did Nielsen or Loebig inform Jack Goodman and/or Paramount Ice Cream Corp. that Jack Goodman and/or Paramount Ice Cream Corp. for the period after March 1, 1962, and each of them, were the subject of a criminal income tax fraud investigation or any tax investigation.

44. On December 18, 1964, Nielsen and Loebig microfilmed books and records of Paramount Ice Cream Corp. which were books and records of original entry for the period after mid-1962. Nielsen and Loebig also took certain original records of Paramount Ice Cream Corp. with them to their Internal Revenue Service office on that date. Neither Nielsen nor Loebig made any analyses on December 18, 1964 of the books and records that they microfilmed or took with them to their Internal Revenue Service office on that date.

45. The criminal income tax fraud investigation of Jack Goodman included the criminal income tax fraud investigation of Paramount Ice Cream Corp. for the period after March 1, 1962.

46. On December 21, 1964, defendants Nielsen and Loebig went to the premises of plaintiff Paramount Ice Cream Corp. as part of the criminal income tax fraud investigation of plaintiff Jack Goodman that was commenced on November 10, 1964. At no time on December 21, 1964 did either defendant Nielsen or defendant Loebig inform Jack Goodman that Jack Goodman and/or Paramount Ice Cream Corp., for the period after March 1, 1962, and each of

them, were the subject of a criminal income tax fraud investigation or any tax investigation. While at the Paramount Ice Cream Corp. premises on December 21, 1964, Nielsen asked Jack Goodman to furnish his personal cancelled checks to Nielsen. Jack Goodman agreed to furnish his personal cancelled checks with the belief that the furnishing of his checks was part of the Pinkerton-Paramount investigation. Nielsen and Loebig examined books and records of Paramount Ice Cream Corp. at the Paramount Ice Cream Corp. premises on December 21, 1964 as part of the criminal income tax fraud investigation of plaintiff Jack Goodman.

47. On December 23, 1964, defendants Nielsen and Loebig went to the premises of Paramount Ice Cream Corp. as part of the criminal income tax fraud investigation of plaintiff Jack Goodman that was commenced on November 10, 1964. At no time on December 23, 1964 did either Nielsen or Loebig inform Jack Goodman that Jack Goodman and/or Paramount Ice Cream Corp. for the period after March 1, 1962, and each of them, were the subject of a criminal income tax fraud investigation or any tax investigation. While at the Paramount Ice Cream Corp. premises on that date, Nielsen obtained personal cancelled checks of Jack Goodman as part of the criminal income tax fraud investigation of plaintiff Jack Goodman.

48. On December 30, 1964, defendants Nielsen and Loebig went to the premises of plaintiff Frigid Process Co. as part of the criminal income tax fraud investigation of plaintiff Jack Goodman that was commenced on November 10, 1964. On December 30, 1964, Nielsen and Loebig reviewed books and records of Frigid Process Co. at the Frigid premises for approximately 2¾ hours.

49. On January 4, 5, 6, and 7, 1965, defendants Nielsen and Loebig went to the premises of plaintiff Frigid Process Co. as part of the criminal income tax fraud investigation of plaintiff Jack Goodman that was commenced on November 10, 1964. Defendants Nielsen and Loebig examined books and records of Frigid Process Co. at the Frigid premises for most of the working day hours on these dates.

50. The criminal income tax fraud investigation of plaintiff Jack Goodman included the criminal income tax fraud investigation of plaintiff Frigid Process Co. Neither plaintiff Jack Goodman nor plaintiff Frigid Process Co. were informed by either defendants Nielsen or Loebig on December 30, 1964, January 4, 5, 6, and/or 7, 1965, or any of these dates, that Jack Goodman and/or Frigid Process Co., and each of them, were the subject of a criminal income tax fraud investigation or any tax investigation.

51. On January 8, 1965, defendants Nielsen and Loebig went to the premises of plaintiff Frigid Process Co. as part of the criminal income tax fraud investigation of plaintiff Jack Goodman and plaintiff Frigid Process Co. The plaintiffs, and each of them, were first informed by defendant Nielsen on January 8, 1965, at 2:30 P.M., that Jack Goodman, Frigid Process Co. and Paramount Ice Cream Corp. for the period after March 1, 1962 were the subject of a tax investigation. The plaintiffs, and each of them, were not aware until January 8, 1965, at 2:30 P.M., that Jack Goodman, Frigid Process Co. and Paramount Ice Cream Corp. for the period after March 1, 1962 were the subject of any tax investigation.

52. Defendants Nielsen and Loebig examined books and records of Frigid Process Co. at the Frigid premises on January 8, 1965 prior to and subsequent to 2:30 P.M.

53. Plaintiff Jack Goodman and plaintiff Frigid Process Co. were each intentionally led to believe by the intentional acts of defendant Nielsen and defendant Loebig, and each of them, that the examination of the Frigid Process Co. books and records by Nielsen and Loebig during the time period up to 2:30 P.M. on January 8, 1965, was part of the Pinkerton-Paramount investigation.

54. Plaintiff Jack Goodman and plaintiff Paramount Ice Cream Corp. were intentionally led to believe by the intentional acts of defendant Nielsen and defendant Loebig, and each of them, that the examination of the Paramount Ice Cream Corp. books and records by Nielsen and Loebig at all times during the time period up to 2:30 P.M. on January 8, 1965, was part of the Pinkerton-Paramount investigation.

55. Defendants Nielsen and Loebig deliberately and intentionally represented to plaintiff Jack Goodman on December 18, 1964 that they were investigating the tax liabilities of Pinkerton-Paramount only.

56. Defendants Nielsen and Loebig, and each of them, willfully and intentionally failed to inform plaintiff Jack Goodman and plaintiff Paramount Ice Cream Corp., or either of them, on December 18, 21 or 23, 1964, that they were in fact engaged in the conduct of a tax investigation of plaintiff Jack Goodman, as an individual, and plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962.

57. Defendants Nielsen and Loebig, and each of them, willfully and intentionally failed to inform the plaintiffs, or any of them, on December 30, 1964, or January 4, 5, 6, 7 or 8, 1965 (up to 2:30 P.M. on January 8, 1965), that they were in fact engaged in the conduct of a tax investigation of plaintiff Jack Goodman, plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962, and/or plaintiff Frigid Process Co.

58. All books, records, documents, and other information obtained from plaintiffs, and each of them, prior to 2:30 P.M. on January 8, 1965, were obtained from the plaintiffs without plaintiffs, or any of them, being informed or being aware that plaintiff Jack Goodman, plaintiff Frigid Process Co. and/or plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962, were the subject of a tax investigation.

59. Plaintiffs, and each of them, permitted Special Agent Nielsen and Internal Revenue Agent Loebig, and each of them, to obtain and examine books, records, documents, and other items, and to gain oral information from the plaintiffs and their agents, and each of them, while plaintiffs, and each of them, were under the impression from the intentional actions of said Internal Revenue Service agents that said agents were investigating the tax liabilities of Pinkerton-Paramount only.

60. The evidence is clear and unequivocal that all evidence, direct and indirect, obtained from the plaintiffs, and each of them, by agents of the Internal Revenue Service during the period after November 10, 1964, up to 2:30 P.M. on January 8, 1965, was obtained by a scheme of fraud and deception.

61. The plaintiffs, and each of them, will suffer imminent and irreparable injury, damage and loss, unless injunctive relief is granted by this Court.

62. The following Conclusions of Law, as far as they may be considered to be findings of fact, are so found by this Court to be true in all respects.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter and parties hereto.

2. Venue is properly laid in this Court.

3. All evidence, direct and indirect, written and verbal, relating to the tax matters of plaintiff Jack Goodman, plaintiff Frigid Process Co. and plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962, or any of them, obtained by defendants, and each of them, and/or their agents, from plaintiffs and each of them and/or their agents, during the period after November 10, 1964, up to 2:30 P.M. on January 8, 1965, was obtained by an unlawful scheme of fraud and deception in violation of the Fourth Amendment of the Constitution of the United States; the evidence of such fraud is clear and unequivocal.

4. Plaintiffs, and each of them, are entitled to recover all books, records, documents, papers, effects, items, and

other evidence, and all copies thereof, relating to the tax matters of plaintiff Jack Goodman, plaintiff Frigid Process Co. and plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962, or any of them, obtained by defendants, and each of them and/or their agents from plaintiffs, and each of them and/or their agents, during the period after November 10, 1964 up to 2:30 P.M. on January 8, 1965.

5. Said written evidence, and all copies thereof, and said verbal evidence, and notes, memoranda, and other reproductions and summaries thereof, as well as any and all leads, information, and any other evidence, written or verbal, obtained at any time, directly or indirectly from or through the use or scrutiny of said unlawfully obtained evidence, is fruit of the poisonous tree.

6. The plaintiffs, and each of them, will suffer imminent and irreparable injury, damage, and loss unless injunctive relief is granted by this Court. Plaintiffs, and each of them, have no adequate remedy at law.

7. Every finding of fact set forth in the foregoing Findings of Fact, deemed to be a conclusion of law, is hereby found to be a conclusion of law.

Judgment in favor of plaintiffs shall be entered accordingly.

## JUDGMENT AND PERMANENT INJUNCTION

The above-entitled cause having come on regularly for trial on December 6, 15 and 16, 1965, January 6, 1966, January 29 and 31, 1968, February 1 and 2, 1968, and documentary evidence and testimony having been received by the Court; and the matter having been argued and submitted to the Court for decision; and the Court having duly considered the evidence and having notified counsel of its decision by Order filed on February 8, 1968; and the Court having made its findings of fact and conclusions of law which state the reasons for granting this injunctive relief and which stated reasons are incorporated herein by reference; and it appearing to the Court that plaintiffs, and each of them, will suffer imminent and irreparable injury, damage, and loss unless this injunctive relief is granted;

It is hereby ordered, adjudged and decreed:

1. That defendants, within ten (10) days of the entry of this Judgment and Permanent Injunction, return to plaintiffs all originals and all copies of all books, records, documents, papers, effects, items and other evidence, relating to the tax matters of plaintiff Jack Goodman, plaintiff Frigid Process Co. and plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962, or any of them, obtained by defendants, and each of them and/or their agents, from plaintiffs, and each of them and/or their agents, during the period after November 10, 1964, up to 2:30 P.M. on January 8, 1965;

2. That defendants, within ten (10) days of the entry of this Judgment and Permanent Injunction, return to plaintiffs all originals and all copies of books, records, documents, papers, effects, items, and other evidence relating to the tax matters of plaintiff Jack Goodman, plaintiff Frigid Process Co. and plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962, or any of them, obtained by defendants, and each of them and/or their agents, from plaintiffs, and each of them and/or their agents, after 2:30 P.M. on January 8, 1965, which said originals and copies were obtained by defendants from plaintiffs as a result of leads, information, and any other evidence, written or verbal, obtained at any time, directly and/or indirectly, from or through the use or scrutiny of the evidence described in paragraph "1" above;

3. That defendants, and each of them, are permanently restrained from directly and/or indirectly using in any manner against plaintiffs, and each of them, all written evidence, and all copies thereof, and all verbal evidence, and all notes, memoranda and other reproductions and summaries thereof, relating to the tax matters of plaintiff Jack Goodman, plaintiff Frigid Process Co. and

plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962, or any of them, obtained by defendants, and each of them and/or their agents, from plaintiffs, and each of them and/or their agents, during the period after November 10, 1964, up to 2:30 P.M. on January 8, 1965, as well as any and all leads, information, and other evidence, written or verbal, obtained from any person or any place at any time, directly and/or indirectly, from or through the use and/or scrutiny of the evidence referred to in paragraphs "1" and "2" above, and/or verbal evidence obtained from plaintiffs, and each of them and/or their agents, during the period after November 10, 1964 up to 2:30 P.M. on January 8, 1965.

4. That defendants, and each of them, are permanently restrained from making available, for use or possible use against plaintiffs, and each of them, to other federal, state, county, municipal, local, or other governmental agencies, all written evidence, and all copies thereof, and all verbal evidence, and all notes, memoranda and other reproductions and summaries thereof, relating to the tax matters of plaintiff Jack Goodman, plaintiff Frigid Process Co. and plaintiff Paramount Ice Cream Corp. for the period after March 1, 1962, or any of them, obtained by defendants, and each of them and/or their agents, from plaintiffs, and each of them and/or their agents, during the period after November 10, 1964, up to 2:30 P.M. on January 8, 1965, as well as any and all leads, information, and any other evidence, written, and/or verbal, obtained from any person or any place at any time, directly and/or indirectly from or through the use and/or scrutiny of the evidence referred to in paragraphs "1" and "2" above, and/or verbal evidence obtained from plaintiffs, and each of them and/or their agents, during the period after November 10, 1964, up to January 8, 1965.

5. That plaintiffs are entitled to their costs as allowed by law.