## No. 25060.

### The People of the State of Colorado *v.*
### Charles Junior Fidler.
(485 P.2d 725)

Decided June 7, 1971.

STANLEY F. JOHNSON, District Attorney, Twentieth Judicial District, RALPH S. JOSEPHSOHN, Deputy, for plaintiff-appellant, cross appellee.

ROLLIE R. ROGERS, State Public Defender, J. D. MAC-FARLANE, Chief Deputy, WILLIAM R. GRAY, Deputy, for defendant-appellee, cross appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THIS matter involves two interlocutory appeals from diverse rulings of the trial court on the defendant's motion to suppress (1) a blood sample and (2) a urine sample. The trial court denied the motion to suppress the blood sample, from which ruling the defendant appeals, and granted the motion to suppress the urine sample, from which ruling the People appeal. We affirm the ruling as to the blood sample.

However, for the reason set forth in Part II of this opinion, we disapprove of the court's consideration of the purely evidentiary question presented by the assertion of the doctor-patient privilege.

The defendant, Charles Junior Fidler, is charged, in count one of a two-count information, with causing death

by operating an automobile while under the influence of intoxicating liquor. C.R.S. 1963, 40-2-1u. In count two he is charged with vehicular homicide. 1965 Perm. Supp., C.R.S. 1963, 13-5-155.

Following a collision on a state highway in Boulder County, in which the pick-up truck driven by the defendant was involved, a state patrolman found the body of a woman, who had been a passenger in defendant's vehicle, lying beside the truck. The defendant was in the vehicle in a semi-conscious state. The patrolman smelled alcohol on the defendant's breath and discovered two half-empty bottles of wine on the floor of the vehicle.

The defendant was immediately taken to a Longmont hospital, pursuant to orders of the patrolman, where doctors rendered emergency treatment of his injuries. However, he was first given a cursory examination by Dr. Rubright, a general practitioner.

The patrolman who went to the scene of the collision in response to the initial report of the collision and a second patrolman were at the hospital during the period when the evidence sought to be suppressed was obtained. Pursuant to the request of one patrolman, Dr. Rubright extracted a blood specimen for chemical analysis. The withdrawal of the blood presented no medical hazard nor did it adversely affect the defendant's physical condition. Dr. Rubright, by this time, had determined that defendant's physical condition indicated the need for a surgeon. He called Dr. Fowler, a surgeon.

Upon assuming responsibility for the care and treatment of the defendant, Dr. Fowler, pursuant to accepted medical procedures, performed a catherization for diagnostic purposes. Catherization is a process by which urine is withdrawn from a patient to determine by observation, microscopically and macroscopically, whether the bladder, kidneys and connecting tubes and tissues have been damaged.

In the catherization process, urine is drained from the

bladder into a bag. A small amount of the urine is then used for diagnostic purposes and the remainder is discarded as waste.

The state patrol officer, who was present in the emergency room during this process, asked Dr. Fowler for a sample of urine to determine its alcohol content. Dr. Fowler withdrew a sample from the bag and gave it to the officer. The sample was sent to a toxicologist for chemical analysis.

The defendant, in his motion to suppress, alleged that both the blood and urine samples were obtained from the defendant under circumstances which rendered the taking within the proscription of C.R.S. 1963, 154-1-7(5) "in that the said samples were acquired by a physician ... in order to properly prescribe" for his patient. He also alleged that the samples were taken without consent and "as such constituted a deprivation and denial of the rights of this defendant as enumerated and protected in Article II, Sections 7, 16, 18 and 25 of the constitution of the State of Colorado and the Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the Constitution of the United States."

Finally, defendant contended that the seizure of the blood and urine samples constituted a breach of the "fundamental fairness" guaranteed by the Fourteenth Amendment to the Constitution of the United States and *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

The trial court ruled favorably to the admission of the blood alcohol test on the basis of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

The urine sample was suppressed by the trial court, because it was taken from the bladder "as part of the medical treatment" by a physician who regarded the person as his patient. This, according to the trial judge, brought the taking of the urine sample within the proscription of C.R.S. 1963, 154-1-7(5) as "information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient."

## I.

The trial court, in denying the motion to suppress the blood sample, correctly based its ruling upon *Schmerber, supra.* Shortly after the trial court's ruling, this court, in *People v. Sanchez,* 173 Colo. 188, 476 P.2d 980, where the defendant was charged with causing injury while driving under the influence of intoxicating liquor, held that neither a search warrant nor the consent of the defendant was necessary for the use of information obtained from a breathalizer test, relying upon *Schmerber.* On the facts, *Schmerber* is more akin to this case than *Sanchez,* particularly as to the circumstances surrounding the obtaining of the blood sample. Here, of course, the defendant did not have counsel to advise him. In *Schmerber,* the defendant, on advice of counsel, refused to consent. Here, the defendant was in a semiconscious condition and was unable to consent or to refuse to give his consent. These differences do not affect the *Schmerber* principle.

Also, in *Schmerber,* it appears that the defendant was arrested prior to the time the police officer directed the doctor to withdraw the blood. The record here does not disclose when Fidler was arrested. This is not a controlling fact under the circumstances of this case. The patrol officer, given the facts as to the collision, the smell of alcohol on defendant's breath and the finding of two half-emptied wine bottles in defendant's vehicle, had probable cause to direct the withdrawal of the blood.

*Schmerber* answers the constitutional issues raised by the defendant as to the blood sample. *Gibbons v. People,* 167 Colo. 83, 445 P.2d 408. *Also see Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, where the defendant was unconscious when the blood sample was taken from him.

## II.

The issue raised by injecting C.R.S. 1963, 154-1-7 (5) into the ruling on the motion to suppress was wholly irrelevant. A brief examination of the five

grounds that will support such a motion (Colorado Rules of Criminal Procedure 41(e)) discloses the limited reach of the motion for return of property and to suppress. The grounds are:

"(1) The property was illegally seized without warrant; or

"(2) The warrant is insufficient on its face; or

"(3) The property seized is not that described in the warrant; or

"(4) There was not probable cause for believing the existence of the grounds on which the warrant was issued; or

"(5) The warrant was illegally executed."

That each of the enumerated grounds is bottomed on Fourth Amendment rights is too clear to need further discussion. Interlocutory appeals under C.A.R. 4.1(a) may only be appealed to this court from adverse rulings on Crim. P. 41 motions. *People v. Thornburg,* 173 Colo. 230, 477 P.2d 372. The defendant does not argue that the doctor-patient privilege has any constitutional overtones. Whether or not the statute is a bar to the admission into evidence at the trial of the analysis of the urine sample by the doctor is purely a matter of statutory application and involves the breadth of the doctor-patient privilege as set forth in the statute. In any event, the question of the suppression of the urine sample was prematurely considered by the trial court.

The ruling of the trial court denying the motion to suppress the blood sample is affirmed. Inasmuch as we have determined that the trial court prematurely ruled on the admissibility of the urine sample and the resultant tests, we must vacate the order of suppression as to the urine sample. At the time of trial, if the urine sample and tests are offered in evidence, the court may then determine the scope of the doctor-patient privilege.

The cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

MR. JUSTICE LEE not participating.