No. 25112.

The People of the State of Colorado *v.*
Ray Renfro Kokesh.
(486 P.2d 429)

Decided June 21, 1971.

A. L. HERRMANN, JR., District Attorney, First Judicial District, STEPHEN O. LUND, Deputy, for plaintiff-appellee.

JOHNSON, MAKRIS & SIMON, P.C., HANS W. JOHNSON, WILLIAM J. HUNSAKER, for defendant-appellant.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS is an interlocutory appeal from an adverse ruling by the trial court on Defendant-Appellant's motion to suppress as evidence a urine sample taken from her without her consent.

The defendant has been charged with two felonies: Causing a Death While Driving Under the Influence, C.R.S. 1963, 40-2-10; and Vehicular Homicide, 1965 Perm. Supp., C.R.S. 1963, 13-5-155. At the scene of the collision where the investigating officers had opportunity to ob-

serve the actions of the defendant they made a determination — amply supported — that defendant was under the influence of alcohol. The officers had probable cause to arrest the defendant who appeared groggy, glazed-eyed, and had an odor of alcohol about her.

Because the defendant had sustained some injury, she was taken to the hospital in the patrol car. En route she was advised of her constitutional rights. The officer testified that subsequent to his arrival at the hospital, he asked one of the doctors in the emergency room for permission to obtain a urine sample from the defendant. The doctor directed a nurse to take the specimen. The defendant was not present at the time the officer spoke with the doctor and the doctor did not discuss the request with the defendant, nor was her consent solicited. The officer testified that he had read the implied consent form to the defendant both prior to making the request of the doctor for the sample and also after the specimen was taken but that he was unable to obtain the defendant's consent.

I.

■ The defendant first contends that the urine specimen was illegally seized without her consent at a time when she was not under arrest. This, she alleges, constitutes a violation of her constitutional rights as guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article II, Section 7 of the Colorado constitution. We disagree.

In a very recent decision of this court, *People v. Fidler*, 175 Colo. 90, 485 P.2d 725, we fully treated a similar argument and held that under the authority of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), there is no compulsion that there be an arrest, so long as the facts establish probable cause to make such arrest at the time the sample was taken:

"The record here does not disclose when Fidler was arrested. This is not a controlling fact under the circum-

stances of this case. The patrol officer, given the facts as to the collision, the smell of alcohol on defendant's breath and the finding of the two half-emptied wine bottles in defendant's vehicle had probable cause to direct the withdrawal of the blood." *Fidler, supra.*

In the instant case, we conclude that the facts known to the officer and reviewed above were sufficient to constitute probable cause to require the specimen of urine from the defendant.

## II.

■ The defendant next contends that the specimen constituted privileged information between doctor and patient under C.R.S. 1963, 154-1-7(5). This argument was likewise answered in *Fidler:*

"The issue raised by injecting C.R.S. 1963, 154-1-7(5) into the ruling on the motion to suppress was wholly irrelevant. * * * Whether or not the statute is a bar to the admission into evidence at the trial of the analysis of the urine sample by the doctor is purely a matter of statutory application and involves the breadth of the doctor-patient privilege as set forth in the statute. In any event, the question of the suppression of the urine sample was prematurely considered by the trial court." *Fidler, supra.*

## III.

■ The defendant also argues that the evidence should be suppressed in that it was seized surreptitiously from her while she was receiving treatment for the injuries received in an automobile accident. As reviewed above, the facts disclose that after requesting and being denied the defendant's permission to obtain the urine, the officer requested one of the doctors present in the emergency room to obtain the sample. The doctor then had a nurse obtain the specimen from the defendant, outside the presence of the officer. The defendant testified at the hearing on the motion to suppress that she assumed that the sample would be utilized only in con-

nection with her medical treatment. Even so, we cannot conclude that the procedures used were violative of the defendant's constitutional rights. As first enunciated in *Schmerber, supra,* and recently applied in *Fidler, supra,* this type of evidence may be obtained without the consent of the defendant in certain carefully restricted situations. We have already determined that the instant case is one in which the intrusion allowed by *Schmerber* is allowable. The other requirements set forth in *Schmerber* also seem to have been satisfied. The taking of the urine has been shown to be a reliable test, and there was no risk, trauma, or pain associated with the manner in which the specimen was obtained. Further, the urine was obtained under the direction of a physician, in a hospital, according to regular medical practices. *Schmerber, supra.*

In reaching our conclusion that the rights of the defendant herein were not violated by the procedure followed, we carefully limit our holding to the facts of the present record. As was emphatically pointed out in *Schmerber,* any taking of such evidence without scrupulous attention to the rights and comforts of the individual concerned will be frowned upon as an unwarranted instrusion upon his constitutional rights.

"The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the State's minor intrusions into an individual's body under stringent limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." *Schmerber, supra.*

IV.

Lastly, defendant argues that there was no chain of evidence to establish that the urine specimen analyzed was the one obtained from the defendant. In the absence of any averment of constitutional overtones for this claim, we conclude that this ground does not fall within the perimeters as set forth in Crim. P. 41 (e)

and to which interlocutory appeals are limited. *See People v. Thornburg,* 173 Colo. 230, 477 P.2d 372 (1970). Objections to evidence on the grounds of materiality, authenticity and relevance are properly made during the course of trial. See also *Fidler, supra.*

The ruling is affirmed.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE GROVES and MR. JUSTICE ERICKSON dissenting.

MR. JUSTICE ERICKSON, dissenting:

I respectfully dissent. To uphold the action taken by the police in obtaining the urine sample would be to subvert our entire system of justice. Fraud cannot be the basis of effective law enforcement. Respect for law and order necessarily includes public recognition of the fact that the police will not consciously mislead any person in order to secure evidence. Although *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), would have permitted the forceful taking of a blood sample to prevent the loss of evidence of intoxication, the police could not obtain blood from a person under investigation by misstating the purpose for which the blood sample was taken. *Graves v. Beto,* 424 F.2d 524 (5th Cir. 1970). *See also, Goodman v. United States,* 285 F.Supp. 245 (D.C. Cal. 1968), where corporate books and records obtained by fraud and deception were suppressed.

To permit the police to utilize a treating doctor and a nurse as disguised agents of the police is to permit a fraud. The defendant's doctor and his nurse were agents of the police and obtained the urine sample under the guise of assisting in diagnosis and treatment.

For the reasons stated, I would suppress the sample and all tests made from the sample.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES have authorized me to say that they join me in this dissent.