**David DERDEYN, individually and on behalf of all others similarly situated, Plaintiffs–Appellees,**

**v.**

**UNIVERSITY OF COLORADO, BOULDER, through its Board, The REGENTS OF The UNIVERSITY OF COLORADO, a body corporate; Gordon Gee, as President of the University of Colorado, Boulder, and; William Marolt as Athletic Director, Department of Intercollegiate Athletics, Defendants–Appellants.**

No. 89CA2044.

Colorado Court of Appeals, Div. III.

Dec. 19, 1991.

Rehearing Denied Jan. 16, 1992.

Certiorari Granted July 13, 1992.

Norton Frickey & Associates, Judd Golden, Lakewood, American Civil Liberties Union, David Miller, Denver, for plaintiffs-appellees.

Richard A. Tharp, Office of University Counsel, Beverly Fulton, Sp. Asst. Atty. Gen., Cooper and Kelley, P.C., Thomas B. Kelley, John R. Mann, Denver, Robert F. Nagel, University of Colorado School of Law, Boulder, for defendants-appellants.

Opinion by Judge PLANK.

This appeal concerns the constitutionality of the drug testing program for intercollegiate athletics at the University of Colorado (the University). Defendants, the University, its Board of Regents, its president, and its athletic director, appeal the judgment entered in favor of the class of student athlete plaintiffs which declared the testing program unconstitutional. We affirm in part and reverse in part.

In the 1984–85 academic year, the University instituted a drug testing program of participants in intercollegiate athletics because of a desire to prepare its athletes for drug testing in NCAA sanctioned sporting events, a concern for athletes' health, an interest in promoting its image, and a desire to ensure fair competition.

The program underwent various changes through the years. It ranged from random testing of athletes on urine samples obtained under direct visual observation to a system which depended on "reasonable suspicion" based, in part, on random rapid eye examinations. If a student failed the rapid eye examination, he or she was required to submit to urinalysis. Each variation of the program allowed drug testing if "reasonable suspicion" was generated by means other than the rapid eye examination. Each variation also required that the students execute consents to testing as a con-

dition to participation in intercollegiate athletics. Penalties for a positive test ranged from mandatory counseling to permanent suspension from athletics.

The student athletes filed this class action to challenge the constitutionality of the program. The complaint alleged that drug testing violates the student athletes' rights to be free from unreasonable searches, to privacy, to due process of law, and to equal protection of the law.

After a bench trial, the trial court held that the program was unconstitutional as being violative of the student athletes' rights to freedom from unreasonable searches under the Fourth Amendment and Colo. Const. art. II, § 7. The court further held that the consent given by the students was coerced and, therefore, invalid. Accordingly, the court permanently enjoined all drug testing of intercollegiate athletes unless supported by probable cause.

Defendants do not appeal the trial court's findings relating to the rapid eye examinations, only those relating to urinalysis.

## I.

■ Defendants first contend that the trial court erred in finding mandatory urinalysis a "search" subject to constitutional standards. This contention is without merit.

The United States Supreme Court has held that the collection and testing of urine constitutes a search under the Fourth Amendment. *Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). In *Skinner*, the Court stated:

It is not disputed ... that chemical analysis of urine, like that of blood can reveal a host of private medical facts about an employee, including whether she is epileptic, pregnant, or diabetic. Nor can it be disputed that the process of collecting the sample to be tested, which may in some cases involve visual or aural monitoring of the act of urination itself implicates privacy interests. As the

Court of Appeals for the Fifth Circuit has stated:

'There are few activities in our society more personal and private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom.'
...

Because it is clear that the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable, the Federal Courts of Appeals have concluded unanimously, and we agree, that these intrusions must be deemed searches under the Fourth Amendment.

Likewise, the Colorado Supreme Court has held that the "extraction or compelled production of body fluids" is a "search" under Colo. Const. art. II, § 7. *People v. Williams*, 192 Colo. 249, 557 P.2d 399 (1976) (the taking of a blood sample is a search requiring probable cause); *see also People v. Kokesh*, 175 Colo. 206, 486 P.2d 429 (1971) (police officers need probable cause to obtain a urine specimen).

Here, the parties stipulated that the University is a state institution and that the actions of the individual defendants constitute state action with regard to this case. Accordingly, we hold that the collection and testing of urine performed as part of the University's drug testing program is a "search" within the meaning of the Fourth Amendment and the Colo. Const. art. 11, § 7.

## II.

Defendants also contend that the trial court erred in holding that the search was unreasonable. We disagree.

### A.

■ The Fourth Amendment is applicable to government searches undertaken for a purpose other than criminal law enforcement. *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct.

1384, 103 L.Ed.2d 685 (1989). However, special needs of the government, beyond the normal need for law enforcement, which make a probable cause requirement impracticable, may justify departures from the usual warrant and probable cause requirements under certain circumstances. *Skinner v. Railway Labor Executives Ass'n, supra. See also National Treasury Employees Union v. Von Raab, supra.*

■ The Fourth Amendment does not prohibit all searches and seizures, only those that are unreasonable. Reasonableness depends on all the circumstances surrounding the search itself. The intrusion on the individual's privacy interest is balanced against the promotion of compelling governmental interests. In limited circumstances, if the privacy interests involved are minimal, and if the compelling governmental interest would be placed in jeopardy by a requirement of individualized probable cause, a search may be reasonable despite the absence of such probable cause. *Skinner v. Railway Labor Executives Ass'n, supra.*

■ As noted above, our society has long recognized that the collection and testing of urine intrudes upon expectations of privacy. The passing of urine is personal and private matter performed without public observation. *Skinner v. Railway Labor Executives Ass'n, supra.* A person does not ordinarily discharge urine expecting others to collect and analyze it. Hence, he has a legitimate expectation of privacy in personal information ascertainable from his bodily fluids.

In *Skinner v. Railway Labor Executives Ass'n, supra,* the Court upheld urine testing of certain railroad employees if they were involved in major train accidents. The federal regulations there at issue, which required the urine testing, were developed because of evidence that alcohol and drug abuse by railroad employees had caused or contributed to a number of significant railroad accidents. In balancing the interests, the Court determined that the government had a compelling interest in

public safety and individualized suspicion was not required.

Although the testing procedure required employees to perform an excretory function traditionally shielded by great privacy, the regulations required the execution of the urine test in a medical setting, and in the Court's view, this reduced the intrusiveness of the collection process. In addition, the Court concluded that the expectations of privacy of covered employees were diminished by their participation in an industry heavily regulated to ensure safety. Thus, the *Skinner* Court held that the government's compelling interest in prevention of disastrous railroad accidents outweighed the employees' diminished privacy interests.

In *Von Raab, supra,* the Court concluded that the government had demonstrated a compelling interest in safeguarding the nation's borders and the public's safety which outweighed the privacy interests of employees who seek promotion to positions that directly involve the interdiction of illegal drugs or require the incumbent to carry a firearm. Thus, the Court upheld the urine testing of these employees as reasonable under the Fourth Amendment. *See also Taylor v. O'Grady,* 888 F.2d 1189 (7th Cir.1989) (annual urine testing of correctional officers who carry firearms or have regular access to inmates was upheld; however, the governmental interest in maintaining the integrity of the work force was insufficient to test all correctional employees); *National Federation of Government Employees v. Cheney,* 884 F.2d 603 (D.C.Cir.1989) (random urine testing of air traffic controllers and pilots upheld, but testing of lab technicians lacked a clear, direct nexus to governments interest in public safety); *Harmon v. Thornburgh,* 878 F.2d 484 (D.C.Cir.1989) (random urine testing of top secret national security employees was justified, but testing of employees who deal with confidential government information was not justified).

■ Here, in our view, the University's interest in securing a drug-free athletic program does not constitute a compelling state interest which rises to the level re-

quired by *Skinner* and *Von Raab.* Certainly there are no public safety or law enforcement interests that are served by such sports program. Accordingly, we hold that the urine testing program here at issue is unconstitutional under the Fourth Amendment.

### B.

■ The Colo. Const. art. II § 7 provides protection from privacy invasions in all instances in which the Fourth and Fourteenth Amendments would provide protection. And, in some instances, the state provision may protect against invasions that the federal constitution would not prohibit. *See e.g., People v. Sporleder,* 666 P.2d 135 (Colo.1983); *Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980). Hence, because we have concluded that the urine tests here violate the strictures of the Fourth and Fourteenth Amendment, we also conclude that they are violative of the state constitution.

### III.

■ Defendants also contend that the trial court erred in holding that the consent given by the student athletes was invalid. We disagree.

■ Although voluntary consent validates an otherwise unconstitutional search, the government bears the burden of proof in showing voluntariness. *People v. Carlson,* 677 P.2d 310 (Colo.1984).

■ Further, the sufficiency and weight of the evidence and the inferences and conclusions drawn from it are matters for the trial court, and its disposition of an issue of fact will not be disturbed on appeal unless so clearly erroneous as to find no support in the record. *Dominion Insurance Co. Limited v. Hart,* 178 Colo. 451, 498 P.2d 1138 (1972).

Here, several athletes, representing the class, testified as to the circumstances under which each of them had signed the consent. That testimony revealed that, because of economic or other commitments the students had made to the University,

they were not faced with an unfettered choice in regard to signing the consent.

Hence, we find sufficient evidence for the trial court to conclude that the University failed to demonstrate that the students voluntarily without coercion signed the consent forms and that conclusion is, thus, binding on appeal.

### IV.

■ We disagree, however, with the portion of the mandatory injunction prohibiting any drug testing of athletes except that premised on probable cause. The courts have carved out exceptions to the probable cause requirement. And, indeed, reasonable suspicion has been approved as a basis for a search in certain circumstances. *People in Interest of P.E.A.,* 754 P.2d 382 (Colo.1988); *see New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

Here, although the trial court acknowledged drug abuse as a national problem, no evidence was presented by defendants to indicate that student athletes used drugs more than other persons of similar age among the general population. In addition, no evidence of actual drug problems or drug related injuries among the University's athletes was found. Hence, the defendants failed to advance a compelling need based on actual student drug related problems. They also failed to develop objective, non-discretionary criteria for reasonable suspicion. Consequently, an appropriate basis for a search was not established, but under different circumstances, the balance of interests could tip in favor of the defendants, and an appropriate testing program premised on an objective reasonable suspicion standard might well be constitutionally permissible. Hence, the injunction decree should address no more than the present testing procedures.

Accordingly, the permanent injunction entered by the trial court is affirmed insofar as it prohibits drug testing under the procedures previously in use by defendants. That portion of the decree that

prohibits all testing not premised on probable cause is reversed.

TURSI and CRISWELL, JJ., concur.