**UNITED STATES of America**

**v.**

**Joe H. TONAHILL.**

**Crim. No. 5737.**

United States District Court
E. D. Texas,
Beaumont Division.

Jan. 14, 1970.

Robert H. Purl, Atty., Tax Division, Dept. of Justice, Washington, D. C., for plaintiff.

Donald S. Thomas and Sander W. Shapiro, Clark, Thomas, Harris, Denius & Winters, Austin, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.[*]

Defendant is a lawyer of wide experience and reputation, who has resided and conducted his legal practice from offices in Jasper, Texas, within the Eastern District of Texas, for more than sixteen (16) years. His practice has been primarily before State and Federal Courts in Beaumont, Texas, within the Eastern District, and he has on occasion practiced before courts in Austin, Texas. He was indicted in San Antonio, Texas, on April 14, 1967, within the Western District of Texas, for three (3) counts of tax evasion in violation of Section 7201, Internal Revenue Code, 26 U.S.C.A. § 7201, alleged to have occurred within the Austin Division of the Western District of Texas, and covering the years 1960, 1961 and 1962. This was late on the last day before the count for 1960 would be barred by limitation. The case was removed by appropriate motion to the Beaumont Division of the Eastern Division of Texas, the Division and District in which the defendant resides.

Among the various motions filed by or on behalf of the Defendant, is a motion to suppress certain evidence obtained by the Government on the grounds that such evidence was obtained through fraud, trickery and deceit, and on the further grounds that such evidence was obtained without first having given Defendant the so-called *Miranda* warnings. Hearings on the motion were held on December 8, 1968, and July 25, 1969. Conflicting testimony was heard from the witnesses as to what transpired at the meetings between Defendant and his accountant and representatives of the Internal Revenue Service. I have examined the record and resolved the conflicts; because of the conclusion I reach on the issue of fraud, trickery and deceit, I do not reach the question of whether *Miranda* applies to the instant case.

As is usual in cases of this kind, the investigation began as a civil audit of

[*] Sitting by special designation of Chief Judge, CCA, 5th Cir., John R. Brown.

Defendant's business by Revenue Agent Belschner. Belschner examined Defendant's books and records from October of 1962, until March of 1964. His procedure was to examine what was submitted and return the records to Defendant or his accountant on a daily basis. The actual examination of the records for each year in this fashion took approximately five (5) days, although the Agent lingered on the case for over a year. By December 3, 1963, he no longer had any of Defendant's records. Sometime prior to March 10, 1964, he formed a suspicion that Defendant had violated Section 7201. On that date, he referred the case to the Intelligence Division of Internal Revenue, which assigned it to Special Agent Hugh Loventhal of the Division's Beaumont office.

No contact was made between the Revenue Service and Defendant from January of 1964, until September of 1964. On September 1, 1964, Belschner and Loventhal met with Defendant and his accountant. Defendant arrived at the meeting early, was introduced to Loventhal, outside the presence of his accountant, as a special agent, and Loventhal stated that he was "assigned to conduct a detailed investigation into the years 1960, 1961 and 1962;" that "Mr. Belschner had discovered what had appeared to be large discrepancies. That was the reason for my participation in the case." If such statements were made, and there is testimony in the record to refute even them, they were made in a manner to minimize the importance of what was being said.

█ It is obvious from the testimony that neither Defendant nor his accountant had any conception of the significance of the term "Special Agent." The accountant practiced locally in Jasper, had had in his practice only one matter go beyond the Revenue Agent level, and had experience with Revenue personnel from Beaumont only when they came to Jasper to help a local agent on civil matters. Defendant had no experience in tax matters whatsoever.

What is more important, in my opinion, is that the Agents must have known that the Defendant and his accountant did not understand that the audit or investigation was criminal. Defendant and his accountant were apprehensive enough—because of the length of time involved in the investigation—to ask both Mr. Belschner and Special Agent Loventhal on the several occasions when they met, what they were doing, why the audit was taking so long, and whether fraud was involved. Not once did the Agents reply in the affirmative that "fraud" or a "crime" was involved. Instead, they stated their function was to reconcile the large discrepancies, to see if they were the result of innocent errors. The Agents testified that they also told Defendant that they were trying to determine if he had attempted to "defeat" the tax, or "evade" the tax. Defendant and his accountant both deny that such statements were made. Assuming, however, that they were, they were coupled with considerable conversation concerning legitimate deductions missed by the Defendant but picked up by them, and errors made by the Defendant in favor of the Government. Such evasiveness by the Agents in the face of direct questions from the Defendant, constitute affirmative fraud, trickery and deceit. Especially is this so when the Agents knew, or should have known, by the actions and repeated questions of Defendant and his accountant, that they did not understand the nature of the investigation.

There was reason, also, for the Revenue Agents to keep the criminal investigation a secret from Defendant. They knew Defendant's reputation as a lawyer; they knew he had expertise in the criminal field; and they knew, as Defendant testified, that any description of the investigation as being criminal in nature would cut off their supply of information—which was given with the full and complete cooperation of the Defendant and his accountant. And even within forty-five (45) days of the receipt of these records, and before any further contact was made with Defend-

ant, the Special Agent had submitted documents to the Office of the Examiner of Questioned Documents for analysis. The documents submitted concerned the same matter which had first aroused Belschner's suspicions.

Nor can there be any argument that the investigation was not a criminal investigation. While Loventhal's credentials as a "Special Agent" do not so state, he testified that he was a member of the Intelligence Division, and that a correct description of his functions would be to "enforce the criminal statutes" applicable to income tax laws. He further testified that he was instructed in 1967, to thereafter warn taxpayers of the criminal nature of the investigations and the taxpayer's rights under the fifth and sixth amendments, even though his duties do not appear to have changed after 1967. Without quoting from the record in detail, it is clear, and I so find, that Defendant and his accountant did not realize at least until Defendant employed a lawyer in the summer of 1965, that a criminal investigation was being conducted, that the Agents knew that Defendant and his accountant did not know the nature of the Investigation, and that they deliberately hid the fact that the investigation was criminal. Even the Government's counsel admits that such behavior constitutes fraud, trickery and deceit.

■■ There have been no Fifth Circuit cases that have dealt with the precise issue in question—namely, that fraud, trickery and deceit will be grounds for a motion to suppress in an income tax fraud case. Two cases in point, however, are United States v. Prudden, 305 F. Supp. 110 (M.D. Fla. 1969) and Goodman v. United States, 285 F.Supp. 245 (C.D. Cal. 1968). While the evidence of affirmative deceit is different in each of the cases, in each as in this case, there was a failure to explain that a criminal investigation was in progress (or a failure to explain the distinction between "special" and "revenue" agents), coupled with affirmative action by the Agents resulting in incriminating actions being taken by the taxpayer. In this

case, the affirmative action was the concealment of the nature of the investigation, the refusal of the Agents to tell Defendant and his accountant that a criminal investigation was underway when specifically asked, and the deliberate attempt to lull Defendant and his accountant into cooperating with the Agents. See Stuart v. United States, 416 F.2d 459 (5th Cir. 1969). In this connection, I point out that a lawyer-defendant in a tax fraud case is held to no higher duty of knowledge of the tax laws and procedure than any other defendant, Bursten v. United States, 395 F.2d 976 (5th Cir. 1968), and cannot be expected to know the difference between a "revenue" and "special" agent. If he is a criminal lawyer, however, he knows enough not to waive his constitutional rights in the course of a criminal investigation. Until he knows the investigation is criminal in nature, however, he has no opportunity to utilize his knowledge. The agents were fully aware of Defendant's background, and deliberately hid the nature of the investigation.

Accordingly, I GRANT the motion to suppress all evidence received by the Special Agent from the Defendant or his accountant, and all evidence obtained through leads from evidence so obtained, or as a result of information given by Defendant or his accountant to the Special Agent, including within my order all evidence re-submitted to the Special Agent even though originally obtained prior thereto. I realize that some of the evidence was examined by Belschner prior to the entry of the Special Agent. It is obvious from the record, however—the time lapse between the date of last contact by Belschner alone and first contact by Special Agent Loventhal, the method of audit used by Belschner, and the lengthy investigation of more than two and one-half (2½) years made by the Special Agent after the matter was referred to him—that the Special Agent made his own investigation from the material submitted to him, and that the information obtained in the course of the civil audit was not used in the criminal

investigation. Furthermore, if suppression of evidence obtained through the behavior of the Agents in this case is to have any meaning, the evidence referred to above must be supressed. The record shows what evidence was submitted to the Special Agent, which includes all material for which receipts were obtained, as well as material received by the Agents even though they neglected to receipt therefor.

In accordance with the foregoing factual findings and legal conclusions, the motion to suppress should be granted and it is so ordered.