UNITED STATES of America
v.
I. James BEDNARSKI, Jr.
Crim. No. 69–65–G.

United States District Court,
D. Massachusetts.
May 28, 1970.

Asst. U. S. Atty. Wayne Hollingsworth, Boston, Mass., for United States.

Sebastian J. Ruggeri, Greenfield, Mass., for defendant.

## MEMORANDUM AND ORDER DENYING MOTION TO SUPPRESS

GARRITY, District Judge.

The defendant has moved to suppress books and records which he delivered to special agents of the Internal Revenue Service at their request, upon the grounds that he was not given the required warning enunciated in Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and that the agents obtained the books and records and various admissions from him by fraud and deceit. The court conducted an evidentiary hearing.

The interviews at which the materials were turned over were not custodial and the materials were turned over voluntarily and therefore there was no necessity to give the Miranda warn-

ings.[1] Morgan v. United States, 1 Cir., 1967, 377 F.2d 507, Spinney v. United States, 1 Cir., 1967, 385 F.2d 908, 910.

A closer question is presented by the claim of fraud. The investigation was conducted from the outset by special agents of the Intelligence Division and defendant, who had never been investigated by revenue agents previously, attached no significance to the fact that the investigators were special agents rather than simply Internal Revenue agents. Previous to visiting the defendant for the first time, the special agents had determined that there was reason to investigate the defendant for criminal violations. The defendant operated a nursing home and the Intelligence Division had made a survey of nursing homes and had determined to investigate those whose tax returns showed that deductions for food costs exceeded 10% of the gross receipts reported. The 1963 and 1964 income tax returns filed by defendant reflected food costs of from $10,000 to $15,000 more than an amount equal to $\frac{1}{10}$ of the gross receipts, which was the I.R.S. rough norm.

The agents visited defendant for the first time on October 14, 1965 and obtained books and records from him then and also on November 3, 1965. A third visit occurred early in 1966 and on the fourth visit, which occurred on March 2, 1966, the special agents asked the defendant numerous questions during an interview which lasted over an hour. At the conclusion of the interview the agents for the first time advised the defendant of his rights under the Fifth Amendment and wrote out an affidavit stating the defendant's approximate annual cost of living, which the defendant signed. On September 14, 1966 defendant went to the Intelligence Division office in Springfield and was interviewed on the record, i. e., with a stenographer transcribing the questions and answers,

for about two hours. The presiding special agent advised the defendant of his constitutional rights at the beginning of the interview and upon its conclusion directed that all of defendant's books and records be returned to him. The case was forwarded to the office of Regional Counsel, which extended to defendant an oportunity for a conference which he attended on March 9, 1967. Defendant was at no time represented by counsel.

The only major discrepancy in the testimony had to do with what the special agents said when they called upon the defendant for the first time on October 14, 1965. Defendant testified that one of them stated that they were visiting him "for a routine audit." The agents denied saying this and the court believes the agents and finds that they did not tell the defendant that they were there for a routine audit. There was also a conflict as to what the agents said to the defendant when they returned his books and records to him following the formal interview on September 14, 1966. The defendant testified that one of the agents told him, "You have nothing to worry about", or words to that effect. The agent denied making any such statement and the court finds that he did not.

It was virtually undisputed and the court finds that defendant, who is 45 years old, is intelligent and a successful businessman; that there was no coercion directed toward him and he turned his books and records over to the special agents voluntarily and answered their questions voluntarily; that the agents were courteous throughout their investigation and the defendant cooperated in that he produced all records requested and answered all questions to the best of his ability. The court also finds: that, during the critical early phase of the investigation between October 14, 1965 and March 2, 1966 while defendant

---

1. All of the special agents' contacts with the defendant occurred before October 3, 1967, when the I.R.S. issued instructions requiring that special agents state their function specifically on their initial contact with a taxpayer and thereafter advise him of his constitutional rights to remain silent and retain counsel. See United States v. Heffner, 4 Cir., 1969, 420 F.2d 809.

was surrendering his books and records and answering the agents' questions, defendant was unaware of his right to refuse the agents' requests if he wished to do so. When the agents first called upon the defendant they told him that they were special agents from the Internal Revenue Service and one of them flashed his credentials, but the defendant attached no significance to the term "special agents" and did not look at the credentials carefully or ask for an opportunity to read them. The special agents did not decide until August 1966 to recommend that the defendant be prosecuted criminally. The court's basic finding is that the defendant cooperated with the agents under the mistaken impression that they were conducting a routine audit with a view to a determination of civil deficiencies and that the special agents did nothing to disabuse the defendant of his misunderstanding but, on the other hand, made no affirmative misrepresentations to him regarding the nature of their investigation or his right to remain silent and refuse cooperation.

 The court concludes that the special agents did not practice any trickery or fraud upon defendant such as would vitiate the consent given by him for inspection of his records. The defendant was made aware at the outset of the first interview that he was the subject of a tax investigation, United States v. Caiello, 2 Cir., 1969, 420 F.2d 471, 473, and of the Government's concern with the accuracy of his tax returns and with his compliance with the tax laws. United States v. Sclafani, 2 Cir., 1959, 265 F.2d 408, 415. It is not essential to the admissibility of statements or documents obtained from a defendant in a non-custodial situation that he should first be warned that the information might be used against him in a criminal case, provided that it was voluntarily and understandingly given.

Turner v. United States, 4 Cir., 1955, 222 F.2d 926, 931.

The Treasury agents had not decided to recommend that the defendant be prosecuted criminally when they interviewed him and obtained his records during 1965 and during the first part of 1966. As in the usual investigation by Internal Revenue agents, see United States v. Mackiewicz, 2 Cir., 1968, 401 F.2d 219, 223, the agents had no way of knowing when they commenced their investigation whether or not evidence of criminal violations would be developed. They had a reasonable basis for investigation but no more. As for defendant's failure to retain counsel, he evidently decided to proceed without counsel in any eventuality. He did not consult or retain counsel until after he had been indicted although he was aware, at least previous to his conference at the office of Regional Counsel in March 1967, that the Intelligence Division of the Internal Revenue Service had recommended that he be prosecuted criminally.

This case is to be distinguished from a group of recent decisions in which motions to suppress were granted because agents engaged in a deliberate scheme to deceive a defendant, United States v. Prudden, M.D.Fla., 1969, 305 F.Supp. 110, 111, or made a deliberate and conscious attempt to deceive and mislead the defendant into the belief that he was the subject of only a civil litigation, United States v. Tarlowski, E.D.N.Y., 1949, 305 F.Supp. 112, 115, or wilfully and intentionally failed to inform the defendant that the investigation was directed toward his returns rather than those of a corporate taxpayer, Goodman v. United States, C.D.Cal., 1968, 285 F.Supp. 245, 251, or took affirmative action to conceal the nature of their investigation, United States v. Tonahill, E.D.Tex., 1970, 308 F.Supp. 97, 99.

Defendant's motion to suppress is denied.