The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Gregg Alan MACLAREN, Defendant–Appellee.

No. 10CA0079.

Colorado Court of Appeals, Div. III.

Sept. 2, 2010.

---

Martin C. Beeson, District Attorney, Jonathan Potosky, Deputy District Attorney, Glenwood Springs, Colorado, for Plaintiff–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Stephen B. McCrohan, Deputy State Public Defender, Glenwood Springs, Colorado, for Defendant–Appellee.

Opinion by Judge BOORAS.

The prosecution appeals the dismissal of one count of vehicular assault, section 18–3–205(1)(b)(I), C.R.S.2009, and one count of driving under the influence of alcohol, section 42–4–1301(1)(a), C.R.S.2009, based upon the investigating officer's failure to comply with the requirements of the ·"express consent" statute, section 42–4–1301.1, C.R.S.2009, and a parallel express consent provision in the vehicular assault statute, section 18–3–205(4)(a), C.R.S.2009. Our jurisdiction is pursuant to section 16–12–102(1), C.R.S.2009, and C.A.R. 1 and 4. We affirm in part, vacate in part, and remand.

## I. Facts

Defendant, Gregg Alan Maclaren, while driving, crossed a double yellow line into

oncoming traffic and hit the victim's car, causing her to suffer serious bodily injury, a broken wrist. Defendant told a responding emergency medical technician (EMT) that he had consumed some beer earlier in the day and that, while driving, he had suffered a coughing fit, which caused him to black out. The investigating officer detected the odor of alcohol on defendant's breath and was also informed by the EMT that defendant had stated that he had been drinking earlier in the day.

The investigating officer followed the ambulance to the hospital, where she again detected alcohol on defendant's breath and was informed of the nature of the victim's injuries. Thereafter, the investigating officer, without advising defendant or requesting that defendant submit to a test of his blood alcohol, had the hospital phlebotomist draw two vials of defendant's blood for testing. Upon receiving the results of defendant's blood tests, the officer informed defendant that his driver's license was being revoked.

Defendant filed a motion to suppress the results of the blood tests on the grounds that the investigating officer did not have probable cause to suspect that he had committed an alcohol related driving offense and, alternatively, that the officer failed to comply with the requirements of the express consent statute. Following a hearing, the trial court concluded that (1) the investigating officer had probable cause to believe defendant had operated a vehicle under the influence of alcohol, and had committed under the influence vehicular assault; and (2) there was no Fourth Amendment violation in the involuntary taking of the blood samples. However, the trial court suppressed the results of the blood alcohol tests after concluding that the investigating officer had failed to request that defendant submit to breath or blood testing as required by the express consent statute, and dismissed the vehicular assault and driving under the influence charges.

## II. Analysis

### A. Statutory requirements

■ The pertinent provisions of the express consent statute, section 42-4-1301.1, are as follows:

(1) Any person who drives any motor vehicle upon the streets and highways and elsewhere throughout this state shall be deemed to have expressed such person's consent to the provisions of this section.

(2)(a)(I) [Such a] person ... shall be required to take and complete, and to cooperate in the taking and completing of, any test or tests of the person's breath or blood for the purpose of determining the alcoholic content of the person's blood or breath *when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle in violation of the prohibitions against DUI, DUI per se, DWAI, habitual user, or UDD.... [The person, with limited exceptions may select between a blood or breath test.]*

. . . .

(3) ... *No law enforcement officer shall physically restrain any person for the purpose of obtaining a specimen of such person's blood, breath, saliva, or urine for testing except when the officer has probable cause to believe that the person has committed ... vehicular assault ... and the person is refusing to take or to complete, or to cooperate in the completing of, any test or tests, then, in such event, the law enforcement officer may require a blood test.*

(Emphasis added.)

The express consent portion of the vehicular assault statute, section 18–3–205(4)(a), states in pertinent part, as follows:

If a law enforcement officer has probable cause to believe that any person was driving a motor vehicle in violation of [under the influence vehicular assault], the person, upon the request of the law enforcement officer, shall take, and complete, and cooperate in the completing of any test or tests of the person's blood, breath, saliva, or urine for the purpose of determining the alcoholic or drug content within his or her system. *The type of test or tests shall be determined by the law enforcement officer requiring the test or tests. If the person refuses to take, or to complete, or to cooperate in the completing of any test or*

*tests, the test or tests may be performed at the direction of a law enforcement officer having probable cause, without the person's authorization or consent.*

(Emphasis added.)

 At the outset, it is important to recognize, as did the trial court, that consent is not a constitutional prerequisite to the collection of a blood sample. In the seminal case, *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court dealt with the propriety of involuntary blood draws. The Court held that the administration of a blood test implicated the constraints of the Fourth Amendment, which expressly provides the right of people to be secure in their *"persons,* houses, papers, and effects." *Id.* at 767, 86 S.Ct. 1826 (emphasis added). The Court went on to hold that "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.* at 768, 86 S.Ct. 1826.

In *People v. Sutherland,* our supreme court, citing the *Schmerber* analysis, established four criteria which govern the taking of involuntary blood samples from a suspect:

> First, there must be probable cause for the arrest of the defendant on an alcohol-related driving offense. Second, there must be a clear indication that the blood sample will provide evidence of the defendant's level of intoxication. Third, exigent circumstances must exist which make it impractical to obtain a search warrant. Fourth, the test must be a reasonable one and must be conducted in a reasonable manner.

*People v. Sutherland,* 683 P.2d 1192, 1194 (Colo.1984).

Here, the trial court engaged in the *Sutherland* analysis and denied defendant's motion to suppress based on the Fourth Amendment. The close question was whether exigent circumstances existed, making it impractical to obtain a search warrant. In analyzing this issue, the trial court relied almost entirely on the two-hour window between the defendant's driving and the collection of the sample specified in the express consent statute. However, the primary exigent circumstance underlying such cases is the dissipation of the blood alcohol evidence.

The primary purpose of the express consent statute, and its predecessor, the implied consent statute, is to encourage drivers to voluntarily consent to blood alcohol testing.

> Under the express consent statute, a suspected drunk driver generally has a statutory right and responsibility to choose between taking either a blood test or a breath test to determine the driver's [blood alcohol content], and the arresting officer generally has a corresponding duty to implement the particular type of test selected by the driver.

*Brodak v. Visconti,* 165 P.3d 896, 898 (Colo. App.2007); *see* § 42–4–1301.1(2)(a)(I). The driver's incentive to comply is the imposition of a remedial administrative sanction of license revocation for refusing to submit to the test. *Augustino v. Colo. Dep't of Revenue,* 193 Colo. 273, 276, 565 P.2d 933, 935 (1977); *People v. Olson,* 921 P.2d 51, 54 (Colo.App. 1996). Obtaining consent is desirable from the state's point of view as it avoids the necessarily time-consuming and risky procedures and requirements imposed by the constitution with respect to the taking of an involuntary sample.

For certain specified offenses, including under the influence vehicular assault, the officer's authority is broadened in that (1) the officer is permitted to select the testing method, and (2) *if the driver refuses to take a test,* the officer can have a sample taken without consent:

> (4)(a) If a law enforcement officer has probable cause to believe that any person was driving a motor vehicle in violation of [under the influence vehicular assault], the person, upon the request of the law enforcement officer, shall take, and complete, and cooperate in the completing of any test or tests of the person's blood, breath, saliva, or urine for the purpose of determining the alcoholic or drug content within his or her system. *The type of test or tests shall be determined by the law enforcement officer requiring the test or tests. If the person refuses to take, or to complete, or to*

*cooperate in the completing of any test or tests, the test or tests may be performed at the direction of a law enforcement officer having probable cause, without the person's authorization or consent.*

§ 18–3–205(4)(a) (emphasis added).

However, even though the officer has broader authority in vehicular assault cases, a request for cooperation must nevertheless be made under the statutory scheme. The general express consent statute specifically conditions the taking of a sample without the driver's authorization or consent upon the driver's refusal:

No law enforcement officer shall physically restrain any person for the purpose of obtaining a specimen of such person's blood, breath, saliva, or urine for testing *except* when the officer has probable cause to believe that the person has committed ... vehicular assault pursuant to section 18–3–205(1)(b), C.R.S., *and the person is refusing to take or to complete, or to cooperate in the completing of, any test or tests, then, in such event, the law enforcement officer may require a blood test.*

§ 42–4–1301.1(3) (emphasis added).

The vehicular assault express consent statute also refers in section 18–3–205(4)(a) to a refusal before an unauthorized sample can be taken:

If the person refuses to take, or to complete, or to cooperate in the completing of any test or tests, the test or tests may be performed at the direction of a law enforcement officer having probable cause, without the person's authorization or consent.

Thus, the statute implies that a refusal by the driver must be made.

Although the People point out that if the officer had made a request for a blood draw here, the blood would have been taken even if defendant had refused, this outcome does not mean that the statutory requirement of a request and refusal is without purpose. In *Schmerber,* the Supreme Court recognized that even a constitutionally acceptable involuntary seizure of blood implicated human dignity and privacy. Accordingly, requiring a refusal of a blood sample before it may be taken without authorization provides some protection for human dignity and privacy beyond what is constitutionally required. Interpreting the statute to require a request for a driver's cooperation in the taking of a blood test does not create a meaningless or absurd result, even though the driver's response ultimately does not control whether a test will be taken.

### B. Suppression

Here, as discussed above, the officer violated the express consent statute and the vehicular assault express consent statute by obtaining a blood sample from defendant when there was neither a request nor a refusal. However, suppression of evidence is generally reserved to remedy violations of constitutional rights rather than statutory rights. *People v. Shinaut,* 940 P.2d 380, 383 (Colo.1997). For violation of a statute, without more, suppression is not a proper remedy unless the statute expressly requires exclusion of evidence. *See People v. Clayton,* 207 P.3d 831, 838 (Colo.2009) (even if police violated statute by not allowing juvenile to call his parent before interrogation, proper remedy would not be suppression of his statements); *People v. Strauss,* 180 P.3d 1027, 1029 (Colo.2008) (when a warrant violates a statutory requirement, courts assess whether the deficiency has violated defendant's constitutional rights, and thus triggers the suppression of the seized evidence); *People v. McKinstry,* 843 P.2d 18, 20 (Colo.1993) (where an officer has obtained evidence in violation of a statute or regulation, the exclusionary rule is not triggered unless the unauthorized conduct also amounts to a constitutional violation).

Here, there is no statutory provision that expressly requires exclusion as a remedy for an involuntary blood test. Section 42–4–1301(6)(e), C.R.S.2009, provides for the admissibility of involuntary blood tests obtained pursuant to section 42–4–1301.1(3) in prosecutions for the crimes specified in section 42–4–1301.1(3), as well as for specified lesser offenses which would not, by themselves, support an involuntary blood draw:

Involuntary blood test—admissibility. Evidence acquired through an involuntary

blood test pursuant to section 42–4–1301.1(3) shall be admissible in any prosecution for DUI, DUI per se, DWAI, habitual user, or UDD, and in any prosecution for criminally negligent homicide pursuant to section 18–3–105, C.R.S., vehicular homicide pursuant to section 18–3–106(1)(b), C.R.S., assault in the third degree pursuant to section 18–3–204, C.R.S., or vehicular assault pursuant to section 18–3–205(1)(b), C.R.S.

§ 42–4–1301(6)(e).

In other words, where an involuntary blood draw is taken, the blood test results are generally admissible in prosecutions for both the greater and lesser offenses. This statute does not specifically provide for the exclusion of evidence for a violation of the requirements of section 42–4–1301.1(3). *Cf.* § 19–2–511(1), C.R.S.2009 ("No statements or admissions of a juvenile made as a result of the custodial interrogation of such juvenile by a law enforcement official concerning delinquent acts alleged to have been committed by the juvenile shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation ...."); § 13–22–307(3), C.R.S.2009 ("Any mediation communication that is disclosed in violation of this [statutory] section shall not be admitted into evidence in any judicial or administrative proceeding."). Thus, we do not read the reference to section 42–4–1301.1(3), without more, as requiring exclusion of evidence.

■ However, where a statute does not expressly provide for suppression, trial courts nevertheless have broad discretion to suppress evidence as a sanction for improper police conduct in implementing the express or implied consent statute. *Turbyne v. People,* 151 P.3d 563, 569 (Colo.2007); *People v. Gillett,* 629 P.2d 613, 619 (Colo.1981).

Here, the trial court found that the officer had made no attempt to comply with the requirements of the statute, and that there were no circumstances that would have prevented compliance:

There was not even an attempt to comply with the express consent statute. There were no circumstances present which pre-vented the officer from complying with the statute. Defendant was alert and cooperative. The officer had at least the ten minute period that she interviewed him to attempt to obtain his consent. There were no extraordinary circumstances present or any good cause for failing to attempt to obtain his consent.

■ Law enforcement officials should not be permitted to violate a defendant's statutory rights with impunity. *People v. Null,* 233 P.3d 670, 681 (Colo.2010). Because the trial court found the officer committed misconduct without justification by extraordinary circumstances or good cause, the trial court did not abuse its discretion by suppressing the results of the blood test.

### C. Dismissal

■ Dismissal of charges against a defendant is a drastic remedy, and may be appropriate in some cases but not in others. *Turbyne,* 151 P.3d at 569; *Shinaut,* 940 P.2d at 383–84. We conclude that dismissal was not an appropriate sanction in this case.

For guidance, we look to the cases under the express consent statute where the supreme court determined that the sanction of dismissal was appropriate.

In *Gillett* and *Riley v. People,* 104 P.3d 218, 219 (Colo.2004), the defendants were asked to submit to chemical testing for purposes of determining their blood alcohol content; each requested that a blood test be administered. However, in both of these cases, *no tests,* blood or breath, were administered and there was no good cause for the failure.

In *Gillett,* The supreme court determined that dismissal was an appropriate sanction because blood testing can establish innocence as well as guilt, and the defendants were deprived of the "right to establish non-intoxication by a highly reliable form of chemical testing," *Gillett,* 629 P.2d at 619.

Similarly, dismissal may be an appropriate sanction where police officers, in the absence of extraordinary circumstances, do not accommodate a defendant's *choice* between a blood or breath test. *Null,* 233 P.3d at 682

(dismissal is appropriate where law enforcement failed to provide the defendant with the test he chose, and prosecution failed to demonstrate extraordinary circumstances justified the failure); *cf. Shinaut,* 940 P.2d at 383–84 (officer's accommodation of the defendant's request to change the type of test is akin to a technical violation, not a violation of a defendant's rights, and dismissal is not warranted).

But here, where defendant had no right to choose between tests or to avoid taking a test by refusing to do so, dismissal is not warranted. Pursuant to the vehicular assault express consent provision, the driver is not accorded a choice of tests between a blood or breath sample: the officer designates the test, and if a driver refuses it the officer may administer an involuntary test.

Here, the investigating officer had probable cause to believe that defendant had committed under the influence vehicular assault. Thus, defendant did not have a right to choose between a blood or breath test; that was the officer's prerogative. Nor did defendant have any right to refuse; if he had refused, the officer could have compelled him to submit to testing. Because the statutory violation did not result in the denial of a right, which if exercised would have changed either the conducting of testing or the type of testing used, dismissal of the charges was not appropriate. *See People v. Roan,* 685 P.2d 1369, 1371 (Colo.1984) (the sanction of dismissal is a drastic remedy, and should not be used where a party has suffered little prejudice).

Therefore, the judgment dismissing the charges is vacated, except that the trial court's suppression of the blood alcohol test is affirmed. The case is remanded for reinstatement of the charges and for further proceedings consistent with this opinion.

Judge ROY and Judge KAPELKE * concur.