The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Joshua Alex SMITH, Defendant–Appellee.

No. 10SA396.

Supreme Court of Colorado,
En Banc.

June 6, 2011.

Carol Chambers, District Attorney, Eighteenth Judicial District, Andrew Cooper, Chief Deputy District Attorney, Centennial, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Jessica Schmidt, Deputy Public Defender, Denver, Colorado, Attorneys for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

Plaintiff-appellant the People of the State of Colorado ("People") appeal the district court's suppression of the results of tests performed on blood drawn from defendant-appellee Joshua Alex Smith following a car accident. The district court, relying on the court of appeals' decision in *People v. Maclaren*, 251 P.3d 578 (Colo.App.2010) (selected for official publication), held that the officers' failure to ask for Smith's consent prior to having a nurse draw his blood violated Colorado's express consent statute. Upon review, we conclude that the statute does not require police officers to ask for a defendant's consent prior to proceeding with a constitutionally proper, involuntary blood draw following a suspected vehicular assault. Accordingly, we overrule *Maclaren* and reverse the district court's suppression order.

## I. Facts and Procedural History

Police officers reported to the scene of a single-car rollover accident on Interstate 225. Smith, who was outside of the car, told the police that the driver of the car had left the scene. The police suspected that Smith was intoxicated. A passenger extricated from the car then told the police that "Joshua" was the driver of the car. The police found another passenger unconscious next to the car with serious injuries.

Paramedics then took Smith to the hospital, where a police officer ordered a nurse to draw blood samples from Smith. The officer did not have a search warrant or ask for Smith's consent to draw blood, and did not tell Smith that the nurse was going to do so. The nurse drew one blood sample, after which another officer advised Smith of his *Miranda* rights, which Smith waived, and interviewed him about the incident. The nurse then drew two more blood samples. Smith did not object to, resist, complain about, or question any of the three blood draws. The police later performed tests on the three blood samples.

After a suppression hearing, the district court concluded that: (1) the police had probable cause to arrest Smith for vehicular assault at the time of the blood draws; (2) the blood would provide evidence of Smith's level of intoxication; and (3) the potential for evidence of Smith's blood alcohol level to dissipate warranted drawing the blood without obtaining a search warrant. The district court nevertheless suppressed the results of tests performed on the blood, concluding that the express consent statute required the police to ask Smith for his consent prior to drawing the blood. The People appealed to this Court, seeking interlocutory review of the suppression order.

## II. Analysis

### A. Jurisdiction

The People assert that this Court has interlocutory jurisdiction over this case under section 16–12–102(2), C.R.S. (2010), and C.A.R. 4.1(a). We disagree, but conclude that our exercise of original jurisdiction under the Colorado Constitution and C.A.R. 21 is nevertheless appropriate.

### 1. Interlocutory Jurisdiction

■ C.A.R. 4.1(a) vests this Court with jurisdiction to hear interlocutory appeals by the People of three types of adverse suppression rulings: (1) the suppression of evidence obtained via an unlawful search and seizure pursuant to Crim. P. 41(e); (2) the suppression of an involuntary confession or admission pursuant to Crim. P. 41(g); and (3) the suppression of improperly ordered or insufficiently supported nontestimonial identification pursuant to Crim. P. 41.1(i). *People v. Null,* 233 P.3d 670, 674 (Colo.2010) (citing *People v. Braunthal,* 31 P.3d 167, 171 (Colo. 2001)). We will not exercise jurisdiction under C.A.R. 4.1(a) outside of these "extremely narrow" circumstances. *Id.* at 674–75 (quoting *Braunthal,* 31 P.3d at 171; citing *People v. McNulty,* 173 Colo. 491, 493, 480 P.2d 560, 561 (1971)).

■ The People contend that Smith's suppression motion falls under Crim. P. 41(e), and that the district court's suppression order therefore vests this Court with jurisdiction under C.A.R. 4.1(a). We disagree.

Crim. P. 41(e) facilitates the suppression of evidence only on the grounds that it was obtained pursuant to an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution, not that it was obtained in violation of a statute. *People v. Fidler,* 175 Colo. 90, 94–95, 485 P.2d 725, 727 (1971) ("That each of the enumerated grounds [in Crim. P. 41(e) ] is bottomed on Fourth Amendment rights is too clear to need further discussion."); *see also People v. Lindsey,* 660 P.2d 502, 505 (Colo.1983) ("Each of the grounds enumerat-

ed in Crim. P. 41(e) and 41(g) is premised on Fourth, Fifth, Sixth, or Fourteenth Amendment rights") (citing *Fidler,* 175 Colo. 90, 485 P.2d 725). Accordingly, this Court cannot exercise jurisdiction under C.A.R. 4.1(a) to provide interlocutory review of a suppression order based exclusively on a non-constitutional, statutory violation. *See Null,* 233 P.3d at 674, 678 (no C.A.R. 4.1(a) jurisdiction over appeal of order suppressing evidence obtained pursuant to an alleged non-constitutional violation of the express consent statute); *Fidler,* 485 P.2d at 727 (no C.A.R. 4.1(a) jurisdiction over appeal of order suppressing evidence obtained pursuant to an alleged non-constitutional violation of a doctor-patient privilege statute) (citing *People v. Thornburg,* 173 Colo. 230, 477 P.2d 372 (1970)).

Here, Smith sought suppression of the tests performed on his blood, contending that the drawing of his blood violated his rights under the express consent statute, or alternatively under the Fourth Amendment. While the Fourth Amendment violation alleged by Smith fell under the rubric of Crim. P. 41(e),[1] the district court rejected that allegation and instead premised its suppression order entirely on the grounds that the blood draws violated the "non-constitutional rights" afforded to Smith under the express consent statute. Thus, the district court's suppression order was not based on a Fourth Amendment violation, and therefore cannot have been based on Crim. P. 41(e). Because the suppression order had no basis in Crim. P. 41(e) and did not conceivably implicate Crim. P. 41(g) or 41.1(i), this Court lacks any proper grounds to review the order under C.A.R. 4.1(a).

### 2. Original Jurisdiction

■ If interlocutory review is inappropriate under C.A.R. 4.1(a), this Court may nevertheless exercise its discretionary authority to review the merits of a case as an original proceeding pursuant to article VI, section 3 of the Colorado Constitution and C.A.R. 21. *Null,* 233 P.3d at 675 (citing

---

1. Crim. P. 41(e) specifically permits a defendant to "move the district court ... to suppress for use as evidence anything so obtained on the ground that ... [it] was illegally seized without warrant."

*Braunthal,* 31 P.3d at 167). In *Null,* we concluded that exercising original jurisdiction was appropriate where the wrongful suppression of evidence pursuant to the express consent statute posed significant impediments to the prosecution's case, and where forcing the prosecution to wait for post-acquittal appellate relief would preclude retrial on double jeopardy grounds. *Id.* We find similar concerns at issue here, and therefore conclude that this case warrants our exercise of original jurisdiction. Accordingly, we turn to the substance of the People's appeal.

### B. Involuntary Blood Draws and the Requirements of the Express Consent Statute

■ The district court premised its suppression order on the failure of the police to ask Smith for his consent prior to having the nurse draw his blood. The Fourth Amendment imposes "stringently limited conditions" on the ability of the police to order blood draws on drivers suspected of alcohol-related offenses. *Schmerber v. California,* 384 U.S. 757, 772, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).[2] There is no Fourth Amendment requirement, however, that the police obtain a driver's consent prior to drawing his blood. *E.g., People v. Smith,* 175 Colo. 212, 214–15, 486 P.2d 8, 9 (1971) (citing *Schmerber,* 384 U.S. 757, 86 S.Ct. 1826).

■ The district court, however, interpreted Colorado's express consent statute, section 42–4–1301.1, C.R.S. (2010), applied to vehicular assaults by section 18–3–205(4)(a), C.R.S. (2010), as including an extra-constitutional requirement that the police ask for the consent of a driver suspected of vehicular assault under the meaning of section 18–3–205(1)(b)(I), C.R.S. (2010), before drawing his blood. We review statutory interpretation by lower courts de novo. *People v. Disher,* 224 P.3d 254, 256 (Colo.2010) (citing *Klinger v. Adams Cnty. Sch. Dist. No. 50,* 130 P.3d

1027, 1031 (Colo.2006)). When interpreting statutes, our primary task is to give effect to the intent of the general assembly and the purpose of the legislative scheme. *Id.* (citing *People v. Yascavage,* 101 P.3d 1090, 1093 (Colo.2004); *Klinger,* 130 P.3d at 1031). In doing so, we read the scheme as a whole, giving consistent, harmonious, and sensible effect to all its parts. *People v. Williamson,* 249 P.3d 801, 803 (Colo.2011) (citing *People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002)). This recognition of the legislature's overall intent must prevail over a literal interpretation of the statute that would lead to a contrary result. *Henisse v. First Transit, Inc.,* 247 P.3d 577, 579 (Colo.2011) (citing *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000)).

■ Section 42–4–1301.1(1) and (2)(a)(I) require anyone driving a motor vehicle in Colorado to consent to testing of the alcoholic content of his or her breath or blood if a police officer has probable cause to believe that the driver has committed an alcohol-related driving violation. *See generally Null,* 233 P.3d at 678–82 (describing in detail the operation of the express consent statute). Under section 42–4–1301.1(3), a driver may ordinarily refuse to cooperate with testing, but, by doing so, risks having his license revoked under section 42–2–126, C.R.S. (2010).

Section 42–4–1301.1(3), however, allows a police officer to physically restrain a driver who refuses to comply with testing and proceed with the testing if the officer has probable cause to believe that the driver has committed one of a limited subset of crimes, including vehicular assault under section 18–3–205(1)(b). The procedure for this involuntary testing is described in section 18–3–205(4)(a), which requires that:

> [T]he person [suspected of vehicular assault], upon the request of the law enforcement officer, shall take, and complete, and

---

**2.** This Court articulated the Fourth Amendment requirements for an involuntary blood draw in *People v. Sutherland:*

> First, there must be probable cause for the arrest of the defendant on an alcohol-related driving offense. Second, there must be a clear indication that the blood sample will provide evidence of the defendant's level of intoxi-

> cation. Third, exigent circumstances must exist which make it impractical to obtain a search warrant. Fourth, the test must be a reasonable one and must be conducted in a reasonable manner.

683 P.2d 1192, 1194 (Colo.1984) (citing *Schmerber,* 384 U.S. 757, 86 S.Ct. 1826).

cooperate in the completing of any test or tests of the person's blood, breath, saliva, or urine for the purpose of determining the alcoholic or drug content within his or her system. The type of test or tests shall be determined by the law enforcement officer requiring the test or tests. If the person refuses to take, or to complete, or to cooperate in the completing of any test or tests, the test or tests may be performed at the direction of a law enforcement officer having probable cause, without the person's authorization or consent.

The combined result of sections 42–4–1301.1(3) and 18–3–205 is that a police officer may perform blood tests on a driver without his or her consent if the officer has probable cause to believe the driver has committed vehicular assault under the influence of alcohol or drugs, subject to the constitutional limitations of *Schmerber*.

Smith does not dispute for the purposes of this appeal that the police had probable cause to believe he committed vehicular assault under the influence of alcohol, that the police did not need his consent to draw his blood, or that the blood draw was constitutional under *Schmerber*. Rather, Smith argues that sections 42–4–1301.1(3) and 18–3–205, as interpreted by the court of appeals in *Maclaren*, required the police to *ask* for his consent prior to drawing his blood.

In *Maclaren*, the court of appeals reasoned that the references in sections 42–4–1301.1(3) and 18–3–205 to a defendant's "refusal" to "take, complete, or to cooperate in the completing" of a blood draw necessarily imply that the police cannot draw a defendant's blood without his consent unless he refuses to consent first. 251 P.3d at 580–81. The court of appeals further reasoned that its interpretation vindicated "human dignity and privacy beyond what is constitutionally required." *Id.*

We reject the *Maclaren* court's interpretation. Sections 42–4–1301.1(3) and 18–3–205 simply establish that the police do not need to obtain a driver's consent prior to drawing his blood when they have probable cause that the driver committed vehicular assault under

the influence of alcohol or drugs, and that they may physically restrain a driver who resists or refuses to cooperate. We cannot reasonably interpret a statutory scheme that plainly contemplates *involuntary* blood draws to require a police officer to ask a driver for his consent to perform a blood draw, knowing that if the driver refuses consent under the illusion that he can avoid the draw, the officer will physically restrain the driver and perform the draw anyway. The statutory scheme, read as a whole, does not evince any legislative intent to create such a requirement, and we will not do so on our own accord.

Moreover, the *Maclaren* court's assertion that involuntary blood draws "necessarily" involve "time-consuming and risky procedures," *id.* at 581, is plainly contradicted by the facts of this case. Even though the police did not ask for Smith's consent prior to drawing his blood, there is no indication that Smith offered any resistance or that any problems occurred during any of the three blood draws. The reality is that constitutionally permissible, involuntary blood draws are generally "commonplace," ordinary, quickly-performed medical procedures involving "virtually no risk, trauma, or pain." *Schmerber*, 384 U.S. at 771, 86 S.Ct. 1826.

### III. Conclusion

For the foregoing reasons, we conclude that sections 42–4–1301.1 and 18–3–205(4)(a) do not include an extra-constitutional requirement that the police ask a driver suspected of vehicular assault under section 18–3–205(1)(b)(I) for his consent prior to drawing his blood. Thus, we hold that the police did not violate Smith's rights under the express consent statute by drawing his blood without asking his consent, and that suppression of the results of tests on the blood is therefore unwarranted.[3] Accordingly, we reverse the district court's suppression order with respect to the blood tests and remand for further proceedings consistent with this opinion.

Justice MARTINEZ dissents, and Justice MÁRQUEZ joins in the dissent.

---

3. We need not and do not address the People's contention that suppression is an improper reme-

dy for a violation of a driver's rights under the express consent statute.

Justice MARTINEZ, dissenting.

The substantive issue in this appeal is whether the express consent statute, section 42–4–1301.1, C.R.S. (2010), and the parallel express consent provision in the vehicular assault statute, section 18–3–205(4)(a), C.R.S. (2010), require a police officer to request a driver's cooperation in the completion of a blood sample test before ordering involuntary testing. The majority claims it "cannot reasonably interpret" the statutory scheme to require a police officer to request a driver's cooperation in performing a blood draw. Maj. op. at 1162. I respectfully disagree.

The plain language of both the express consent and vehicular assault statutes require an officer to extend a request to a driver to cooperate in testing. *See CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.,* 105 P.3d 658, 660 (Colo.2005) ("If the statutory provisions are clear, we apply their plain and ordinary meaning."). Section 42–4–1301.1(2)(a)(I) plainly states a driver must cooperate in testing, "when so requested and directed by a law enforcement officer having probable cause...." Section 18–3–205(4)(a) also requires an officer to request a driver's cooperation in testing:

> [T]he person, *upon the request of the law enforcement officer,* shall take, and complete, and cooperate in the completing of any test or tests of the person's blood, breath, saliva, or urine for the purpose of determining the alcoholic or drug content within his or her system.

(emphasis added). The combined effect of these two statutes is to require an officer to request a driver's cooperation before ordering involuntary testing.

Neither section 42–4–1301.1(3) nor the statutory scheme, read as a whole, renders this interpretation unreasonable. Section 42–4–1301.1(3) provides, in relevant part, that if the driver refuses to cooperate in taking a test, the officer may order involuntary testing:

> No law enforcement officer shall physically restrain any person for the purpose of obtaining a specimen of such person's

blood, breath, saliva, or urine for testing except when the officer has probable cause to believe that the person has committed ... vehicular assault pursuant to section 18–3–205(1)(b), C.R.S., and the person is refusing to take or to complete, or to cooperate in the completing of, any test or tests, then, in such event, the law enforcement officer may require a blood test.

Based on this section, the majority concludes that officers "do not need to obtain a driver's consent prior to drawing his blood when they have probable cause that the driver committed vehicular assault under the influence of alcohol or drugs...." Maj. op. at 1162. The majority then reasons that it would be unreasonable to require the police to request the driver's cooperation given that the police can "physically restrain the driver and perform the draw anyway." *Id.* The majority thus concludes that "the statutory scheme, read as a whole, does not evince any legislative intent to" require officers to request a driver's cooperation prior to ordering involuntary testing. *Id.*

The majority's statutory interpretation runs contrary to the plain text of the statute. Section 42–4–1301.1(3) does eliminate the need for an officer to obtain the driver's consent prior to ordering involuntary testing.[1] Obtaining a driver's consent to testing is, however, distinct from requesting a driver's cooperation in testing. Sections 42–4–1301.1(2) and 18–3–205(4)(a) make this distinction explicit by requiring an officer to "request" the driver's cooperation. Only if the driver "is refusing to take or to complete, or to cooperate in the completing of, any test or tests," § 42–4–1301.1(3), may the officer then order involuntary testing. *See also* § 18–3–205(4)(a) ("If the person refuses to take, or to complete, or to cooperate in the completing of any test or tests, the test or tests may be performed at the direction of a law enforcement officer having probable cause, without the person's authorization or consent."). The plain text of the statute thus permits the police to order involuntary testing only after requesting the driver's cooper-

---

1. To the extent *People v. Maclaren,* 251 P.3d 578, 580–81 (Colo.App.2010) (selected for official pub-

lication), requires a driver's consent, it is misplaced.

ation and only if the driver is refusing to cooperate.

Nonetheless, despite this clear statutory scheme, the majority jumps from its conclusion that an officer does not need to obtain the driver's consent to its conclusion that it would be unreasonable to require an officer to request a driver's cooperation. As a result, the majority overlooks the express statutory language requiring an officer to "request" a driver's cooperation in completing a blood test. *See* § 42–4–1301.1(2); § 18–3–205(4)(a). Similarly, the majority effectively deletes the requirement that the driver must "refuse" to cooperate in testing before the officer may physically restrain the driver and order testing. *See* § 42–4–1301.1(3); 18–3–205(4)(a). As a result, the majority's interpretation of the statutory scheme contradicts the plain language of the statute and our principles of statutory interpretation. *People v. Cross*, 127 P.3d 71, 73 (Colo.2006) ("We do not add or subtract statutory words that contravene the legislature's obvious intent.").

The majority attempts to minimize its deletion of the statutory requirement that an officer requests a driver's cooperation in testing. The majority explains that there is no Fourth Amendment requirement that the police ask for the consent of a driver suspected of vehicular assault before drawing his blood. Maj. op. at 1161. The majority thus criticizes the district court for reading such an "extra-constitutional" requirement into the statutory scheme. *Id.* at 1161. This argument, however, misses the point. As the majority rightly notes, this case is premised solely on the "non-constitutional rights afforded to Smith under the express consent statute." Maj. op. at 1160 (citations omitted). The principal issue then is whether the express consent and vehicular assault statutes require the police to request a driver's cooperation in testing, not whether the Fourth Amendment requires such a request.

Instead of adopting the majority's flawed statutory interpretation, I would track the statutory language and harmonize sections 42–4–1301.1 and 18–3–205(a)(a) by requiring officers to request a driver's cooperation in testing prior to ordering involuntary testing. Only if the driver then refuses to cooperate

may the officer then order involuntary testing. In the instant case, however, the officer did not request Smith's cooperation in taking a blood draw. Rather, the officer ordered a nurse to draw Smith's blood. The officer's failure to request the defendant's cooperation prior to ordering the blood draw violates the provisions of sections 42–4–1301.1 and 18–3–205(4)(a). Accordingly, I would affirm the trial court's order suppressing the evidence. *See Turbyne v. People*, 151 P.3d 563, 569 (Colo.2007) (court retains discretion to suppress evidence).

I am authorized to say that Justice MÁRQUEZ joins in this dissent.