2012 COA 75

**The PEOPLE of the State of Colorado, Petitioner–Appellant,**

**In the Interest of C.F., a Child, Respondent–Appellee.**

No. 11CA0928.

Colorado Court of Appeals, Div. II.

April 26, 2012.

Daniel H. May, District Attorney, Deborah F. Pearson, Deputy District Attorney, Colorado Springs, Colorado, for Petitioner–Appellant.

No Appearance for Respondent–Appellee.

Opinion by Judge J. JONES.

¶ 1 The People appeal the district court's rulings that the prosecution had not proved that C. F., a juvenile, had committed acts which, if committed by an adult, would constitute the offenses of: (1) falsely reporting an explosive, weapon, or harmful substance, *see* § 18–8–110, C.R.S.2011; and (2) interfering with the staff, faculty, or students of an

educational institution, *see* § 18–9–109(2), C.R.S.2011. Because the district court's rulings were premised on legal interpretations of the language in the statutes under which C.F. was charged, and the People challenge those interpretations, we have jurisdiction under section 16–12–102(1), C.R.S.2011.[1] We approve the district court's rulings.

### I. Background

¶ 2 Over a three-day period, C.F. telephoned an elementary school (once) and combined middle school and high school (twice), leaving messages recorded by the schools' voice mail systems:

- On Wednesday, November 24, 2010, at about 7:34 p.m., C.F. called Cresson Elementary School in Cripple Creek, Colorado, saying: "This is John Rivers. 9 p.m. [sic] tomorrow morning, the so-called greatest school in the world, Cresson, will be blown up. This is a bomb threat from John Rivers. My address is 807 South 4th Street, Colorado Springs, Colorado. Bitch. So, what's going on? I'm just [inaudible]."

- Later on November 24, 2010, C.F. called Cripple Creek/Victor High School, saying: "This is John Rivers. Tomorrow at 12 p.m., the school you know as CCV will be blown to shit. If you want to save the school, you will shoot yourself for no fucking . . . ."

- On Saturday, November 27, 2010, C.F. again called Cripple Creek/Victor High School, saying: "This is John Waters. If you don't have 40 pounds of crack delivered to this address [inaudible], I will bomb the shit out of your school." He then provided an address in Victor, said, "This is [C.W.] calling," mentioned other members of the W. family, and recited the W.s' telephone number.

¶ 3 Because C.F. left the messages during the Thanksgiving holiday break, when no one was at the schools, school administrators did not hear them until Monday, November 29. They contacted police. After deciding that the threats were credible, administrators evacuated the schools. Police officers searched the schools for explosives, but found none.

¶ 4 Following an investigation, local police determined that C.F. had made the phone calls. The People initiated a delinquency proceeding against C.F., alleging violations of the statutes identified above.[2]

¶ 5 The first three charges alleged violations of section 18–8–110, which provides:

> Any person who reports to any other person that a bomb or other explosive, any chemical or biological agent, any poison or weapon, or any harmful radioactive substance has been placed in any public or private place or vehicle designed for the transportation of persons or property, knowing that the report is false, commits a class 6 felony.

¶ 6 Two other charges alleged violations of subsection (2) of section 18–9–109. Because the entire text of section 18–9–109 is relevant to our interpretation of subsection (2), we recite all of that section.

> (1) No person shall, on or near the premises or facilities of any educational institution, willfully deny to students, school officials, employees, and invitees:
>
> (a) Lawful freedom of movement on the premises;
>
> (b) Lawful use of the property or facilities of the institution;
>
> (c) The right of lawful ingress and egress to the institution's physical facilities.
>
> (2) No person shall, on the premises of any educational institution or at or in any building or other facility being used by any educational institution, willfully impede the staff or faculty of such institution in the lawful performance of their duties or will-

---

**1.** As relevant here, section 16–12–102(1) provides that "[t]he prosecution may appeal any decision of a court in a criminal case upon any question of law." *See People in Interest of C.A.J.,* 148 P.3d 436 (Colo.App.2006) (reviewing interpretation of a statute in a delinquency proceeding under section 16–12–102(1)).

**2.** The People also alleged two violations of another statute, but voluntarily dismissed those charges at trial.

fully impede a student of the institution in the lawful pursuit of his educational activities through the use of restraint, abduction, coercion, or intimidation or when force and violence are present or threatened.

(3) No person shall willfully refuse or fail to leave the property of or any building or other facility used by any educational institution upon being requested to do so by the chief administrative officer, his designee charged with maintaining order on the school premises and in its facilities, or a dean of such educational institution, if such person is committing, threatens to commit, or incites others to commit any act which would disrupt, impair, interfere with, or obstruct the lawful missions, processes, procedures, or functions of the institution.

(4) It shall be an affirmative defense that the defendant was exercising his right to lawful assembly and peaceful and orderly petition for the redress of grievances, including any labor dispute between an educational institution and its employees, any contractor or subcontractor, or any employee thereof.

(5) Any person who violates any of the provisions of this section, except subsection (6) of this section, commits a class 3 misdemeanor.

(6) (a) A person shall not knowingly make or convey to another person a credible threat to cause death or to cause bodily injury with a deadly weapon against:

(I) A person the actor knows or believes to be a student, school official, or employee of an educational institution; or

(II) An invitee who is on the premises of an educational institution.

(b) For purposes of this subsection (6), "credible threat" means a threat or physical action that would cause a reasonable person to be in fear of bodily injury with a deadly weapon or death.

(c) A person who violates this subsection (6) commits a class 1 misdemeanor.

¶ 7 At trial, C.F. essentially conceded that he had made the calls and did not dispute the substance of what he had said. He argued, however, that, as to the charges based on section 18–8–110, the prosecution was required to prove that he had reported that a bomb had "been placed" at the schools, and he had not said that in any of the calls. As to the charges based on section 18–9–109(2), C.F. argued that the prosecution was required to prove he was "on the premises of" the schools when he acted, and that there was no evidence that he was on school premises when he made the calls.

¶ 8 The prosecution disagreed with C.F.'s arguments, for reasons we discuss below. The court, however, agreed with C.F.'s interpretations of the statutes. The court, acting as the fact finder, then found that (1) the prosecution had failed to prove an element of the charges under section 18–8–110 because there was "no evidence and I don't believe it is a reasonable inference" that C.F. had reported that a bomb had been placed at the schools; and (2) the prosecution had failed to prove violations of section 18–9–109(2) because there was no evidence that C.F. was at the schools when he interfered with school operations. Accordingly, the district court acquitted C.F. of all charges.

## II. Analysis

### A. Standard of Review

¶ 9 The People's challenges to the district court's rulings present questions of statutory interpretation. We review such questions de novo. *People v. Smith*, 254 P.3d 1158, 1161 (Colo.2011); *People in Interest of C.A.J.*, 148 P.3d at 437 (construing section 18–9–109(2)).

¶ 10 Our primary tasks in interpreting a statute are to ascertain and give effect to the General Assembly's intent. *People v. Laeke*, 2012 CO 13, ¶ 11, 271 P.3d 1111; *Smith*, 254 P.3d at 1161. To do this, we look first to the language of the statute, giving the words and phrases therein their plain and ordinary meanings. *Smith v. Executive Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo.2010). But we must view the language in context: therefore, "[w]e must read the statute as a whole, construing each provision consistently and in harmony with the overall statutory design, if possible." *Whitaker v. People*, 48 P.3d 555, 558 (Colo.2002); *accord Smith*, 254

P.3d at 1161. If, after doing this, we determine that the statutory language is unambiguous, we apply it as written, without resorting to other rules of statutory construction. *Smith*, 230 P.3d at 1189; *American Numismatic Ass'n v. Cipoletti*, 254 P.3d 1169, 1171 (Colo.App.2011). If, however, we determine that the relevant language is ambiguous in some material respect, we may look to extrinsic evidence of legislative intent, including prior law, legislative history, the consequences of a particular construction, and the goal of the statutory scheme. *Bd. of County Comm'rs v. Costilla County Conservancy Dist.*, 88 P.3d 1188, 1193 (Colo.2004); *L & R Exploration Venture v. Grynberg*, 271 P.3d 530, 533 (Colo.App.2011); *see* § 2–4–203, C.R.S.2011.

### B. Section 18–8–110: "Has Been Placed"

¶ 11 In challenging the district court's ruling with respect to section 18–8–110, the People assert that "the statute does not require that the [defendant] said that the bomb had been placed." If, by this, the People mean that the statute does not require proof that the defendant reported that a bomb (or other prohibited item or substance) has been placed, we disagree. The statute requires that the People prove that the defendant reported that the bomb (or other prohibited item or substance) "has been placed in any public or private place or vehicle designed for the transportation of persons or property...."[3] As a grammatical matter, therefore, the report must indicate that the bomb (or other prohibited item or substance) is, at the time of the report, in the public or private place or vehicle.[4] Thus, contrary to the People's assertion, not every bomb threat comes within the ambit of section 18–8–110. In effect, the People ask us to ignore the phrase "has been placed" (or to ignore the relevant context). We are not at liberty to do so. *See Turbyne v. People*, 151 P.3d 563,

567 (Colo.2007) ("We do not add words to the statute or subtract words from it."); *Comcast of California/Colorado, L.L.C. v. Express Concrete, Inc.*, 196 P.3d 269, 273 (Colo.App. 2007) (court should not interpret a statute so as to render any part of it meaningless).

¶ 12 We are not persuaded otherwise by the cases on which the People rely. Those cases concern other statutes, each of which includes language materially different from that in section 18–8–110. And none of them construe language even remotely analogous to that at issue here. Moreover, in each of those cases, the threat indicated where the bomb was located—that is, that a bomb had been placed somewhere. *See United States v. Norman*, 951 F.2d 1182 (10th Cir.1991) (involving a federal statute; the defendant made telephone calls to an airline saying that persons were on two flights with explosives); *United States v. White*, 475 F.2d 1228 (4th Cir.1973) (involving a federal statute; the defendant carried a bag onto an airplane and said, "If I drop this bag it will blow us to bits"); *State v. Tanis*, 247 S.W.3d 610 (Mo. Ct.App.2008) (involving a Missouri statute; the defendant told a police officer that he had explosives in his truck).

¶ 13 We do not hold that section 18–8–110 applies only if a person reports expressly that a prohibited item or substance has been placed in a public or private place or vehicle. A report that implies that a prohibited item or substance has been placed in a particular location is a report that a prohibited item or substance has been placed somewhere. Thus, if the substance of and circumstances surrounding a defendant's report permit a reasonable inference that a prohibited item or substance has been placed in a public or private place or vehicle, a fact finder may conclude that the "has been placed" element has been proved. *People v. Montano*, 195

---

**3.** The statute requires that the prosecution prove all of the following beyond a reasonable doubt: (1) the defendant; (2) reported to another person; (3) that a bomb (or other prohibited item or substance); (4) has been placed; (5) in a public or private place or vehicle used for the transportation of persons or property; (6) the report was false; and (7) the defendant knew that the report was false.

**4.** This is not to say that the defendant must have reported the precise location of the bomb (or other prohibited item or substance)—i.e., which room or what part of the vehicle it is in. The statute does not require that degree of specificity.

Colo. 420, 423, 578 P.2d 1053, 1055 (1978) (prosecution may establish element of crime through evidence from which a jury properly could infer the element); *People v. Caldwell,* 43 P.3d 663, 672 (Colo.App.2001) (same).

¶ 14 Contrary to the People's suggestion, the district court did not rule that they were required to prove that C.F. said expressly that bombs had been placed at the schools or that C.F. said where in the schools the bombs had been placed. Rather, the district court ruled, correctly, that proof of a report that a bomb had been placed somewhere is expressly required by the statute. Reading the court's statements in their entirety, it appears to us that the court recognized the possibility that proof that the statements and relevant circumstances implied that bombs had been placed would be sufficient, but found, as a factual matter, that the substance of C.F.'s reports did not support an inference that bombs had been, at the time of the reports, placed somewhere. Though the evidence may have supported such an inference, it did not compel such an inference. Therefore, we cannot say that the district court erred in finding that the prosecution had failed to prove all elements of the offenses beyond a reasonable doubt. *People in Interest of C.A.K.,* 652 P.2d 603, 613 (Colo.1982) (it is the trial court's prerogative to determine the credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence); *People in Interest of S.M.A.M.A.,* 172 P.3d 958, 962 (Colo. App.2007) (same).

## C. Section 18–9–109(2): "On the Premises of Any Educational Institution"

¶ 15 As noted, the district court read the clause "on the premises of any educational institution or at or in any building or other facility being used by any educational institution" in section 18–9–109(2) as requiring proof that C.F. was on school premises when he made the threats. The People contend that the district court erred, because the clause refers only to where the disruption resulting from the defendant's acts must occur. We conclude, however, that the clause unambiguously concerns where the person charged is located when he engages in activity proscribed by the statute. We reach this conclusion for four reasons.

¶ 16 First, the clause immediately follows the introductory phrase "No person shall." It thus appears to limit the persons subject to punishment under the statute to those who act while in specified locations.

¶ 17 Second, subsection (1) of the statute contains a similar limiting clause, but proscribes denying others freedom of movement "on the premises," denying others lawful use "of the property or facilities," and denying others "ingress and egress" to the premises, conduct which must occur on the premises. Though subsections (1) and (2) proscribe different conduct, they have parallel structure, indicating that the limiting clause in subsection (2) also relates to where the person engages in proscribed conduct.

¶ 18 Third, subsection (3) begins, "No person shall willfully refuse or fail to leave" the specified premises. It relates to situations in which the person commits acts, threatens to commit acts, or incites others to commit acts which would disrupt an educational institution—the very types of acts described in subsections (1) and (2). Thus, it presupposes the person's presence on the specified premises when the person commits proscribed conduct.

¶ 19 Fourth, subsection (4) provides an affirmative defense, presumably to charges under other subsections of the statute, for exercising the "right to lawful assembly." Again, this implicitly presupposes that the person's conduct occurred on the specified premises.

¶ 20 We are not persuaded by the People's argument that interpreting the statute in this manner allows a person not to be "held responsible" for a disruption at a school caused by a bomb threat made by telephone. The People overlook subsection (6) of section 18–9–109, which proscribes making a "credible threat to cause death or

to cause bodily injury with a deadly weapon against" students, school officials, or employees of educational institutions, among others.[5] And, in any event, it is not our role to expand a penal statute's scope beyond its express limits so as to further some perceived policy goal, even one as unobjectionable as deterring false bomb threats at schools. *See Martinez v. People,* 69 P.3d 1029, 1031 (Colo.2003) ("Subject to constitutional limitations . . ., it is the prerogative of the legislature to define crimes . . . .").

¶ 21 The rulings are approved.

Judge CASEBOLT and Judge HAWTHORNE concur.

---

**5.** A bomb is a "deadly weapon" as that term is used in section 18–8–109. *See* § 18–1–901(3)(e)(IV), C.R.S.2011 ("deadly weapon" includes "any other weapon, device, instrument, material, or substance, whether animate or inanimate" that is, in the manner used or intended to be used, "capable of producing death or serious bodily injury").